# THE MARYLAND CASUALTY COMPANY OF BALTIMORE

## *vs.*

## HENRY CHARLES OHLE.

*Accident Policies: loss of eyesight; blood poisoning while per-*
*forming surgical operation; notice.*

In general, provision, in insurance policies, "as soon as may be
reasonably possible," means in a reasonable time after the
accident occurs, under the facts and circumstances of each
particular case.                                    p. 378

It was expressly stipulated in an accident policy that the policy
should extend to cover any death, loss of limb, sight, total or
partial disability caused by blood poisoning from septic mat-
ter introduced in the system through wounds suffered in pro-
fessional operations; there was also the requirement that writ-
ten notice should be given as soon as might be possible of any
injury for which a claim was to be made, with full particu-
lars, etc., and that affirmative proof of loss of sight must be
furnished to the company within two months of the time of
loss of sight.   The plaintiff contracted blood poisoning while
engaged in a professional operation in October, 1910, but not
until March, 1911, was he convinced that he would lose the
use of his eyes; on March 15th he gave notice to the company
of loss of sight, with full account of how the accident oc-
curred; it had been fully proven that blood poisoning of the
sort he had contracted did not, in general, affect the eyes
until two or three years after the infection; *held,* that, under
all the circumstances of the case, the notice was sufficient.
                                                    p. 380

*Decided April 10th, 1913.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The appellee lost his sight through blood poisoning as the result of septic matter introduced into his system while engaged in performing a surgical operation; he brought suit upon an accident policy covering such an accident. A verdict for $7,500 having been rendered in the plaintiff's favor, and judgment entered thereon, the defendant appealed.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Walter L. Clark* (with whom were *Robert R. Carman* and *George W. Dexter* on the brief), for the appellant.

*W. W. Varney* and *Wm. Colton* (with whom was *F. N. Tanner*, on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 31st day of January, 1908, the appellant, by its policy of insurance, insured the appellee against bodily injuries effected directly and independently of all other causes, through external violence and accidental means, according to the terms of an accident policy set out in the record.

By a rider attached to and made a part of the policy dated the 13th day of February, 1908, "it was understood and agreed that the insurance under the policy was extended to cover against death, loss of limb or sight, total or partial disability, caused by blood poisoning from septic matter introduced into the system through the wounds suffered in professional operations."

The suit in the case is based upon this policy and the declaration contains the money counts and a special count on the policy.

The special count avers in substance that the defendant by its policy promised to pay the plaintiff the sums mentioned in the policy, to wit, a weekly indemnity of twenty-five dollars, the principal sum of five thousand dollars and an accumulative sum on each consecutive full year renewal of the policy, of ten per cent. increase of the above mentioned sums; that the policy insured the plaintiff aganist bodily injuries effected directly and independently of all other causes, through external, violent and accidental means, suicide, sane or insane, not included, as follows: Against death, loss of limb or sight, total or partial disability caused by blood poisoning from septic matter introduced into his system through the wounds suffered in professional operations.

It further avers that the plaintiff did on or about the 7th of October, 1909, while in the performance of a professional operation, by accidental means, have septic matter introduced into his system through a wound suffered in a professional operation, and in consequence thereof he has lost the sight of both of his eyes, caused by blood poisoning effected directly and independently of all other causes from the septic matter so introduced by reason of the wound suffered in the professional operation. That his injuries were proven within the time required by the terms of the policy, to wit, he was taken with blood poisoning on or about the 10th day of March, 1911, in consequence of the introduction of septic matter into his system, and, independently and exclusively of all other causes, he was immediately, continuously and wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation for more than ninety days, and did on or about the same day notify the said defendant in writing of the same; and that in consequence of the blood poisoning caused as aforesaid he has permanently lost the sight of both his eyes.

That the amounts of the policy are now due and payable to him; that he has made demand for the same, and payment thereof has been refused, and nothing has been paid on account of the same, and that he is now entitled to receive the weekly indemnity of twenty-five dollars from the 10th of March, 1911, until the payment of the principal sum under the policy, and to receive the principal sum in accordance with the terms of the policy and the accumulative amounts, in addition to the same.

At the trial of the case the defendant relied upon five pleas setting up the company's defense to the action—first, never indebted as alleged; second, it did not promise as alleged; third, the plaintiff did not comply with the terms and condition of clause 12 of the insurance policy, in that he did not give the defendant written notice of the injury complained of, causing the loss of sight, with full particulars thereof, as soon as it was reasonably possible after the happening of the accident causing same; fourth, that the loss of sight complained of did not result solely from the introduction of septic matter into the system of the plaintiff, and within ninety (90) days from the date when the septic matter was so introduced the system of the plaintiff, as provided in clause 1 of the insurance policy; and fifth, that the introduction of the septic matter into the system of the plaintiff complained of did not, independently and exclusively of all other causes, immediately, continuously and wholly disable and prevent the plaintiff from performing the duties pertaining to his profession, and that the loss of sight did not occur during said continuous disability and within two hundred (200) weeks after the introduction of said septic matter into the system of the plaintiff, as provided in clause 1 of said insurance policy.

Issue was joined on the defendant's first and second pleas, a replication to the third plea to the effect that the plaintiff gave to the defendant written notice of the injury complained of causing the loss of sight, according to the terms

and conditions of clause 12 of the insurance policy, and a demurrer was interposed to the fourth and fifth pleas. The demurrer was sustained by the Court to the fourth and fifth pleas, and the case was tried upon issue joined on the other pleas. A verdict was rendered in favor of the plaintiff for the sum of $7,500, and from a judgment entered thereon this appeal has been taken.

The questions for our consideration arise upon a single exception, and that is to the ruling of the Court in rejecting the defendant's nine prayers, as offered, and to its refusal to instruct the jury at all. There were no instructions offered upon the part of the plaintiff, but it was conceded that in the event of a recovery in the case the liability of the defendant should be a sum not exceeding $7,500. The defendant refused to offer any evidence at the trial, and rested its case upon the close of the plaintiff's testimony.

The policy is set out in the record, and it is admitted that it was duly executed and that it was in full force down to May, 1911, so there can be no controversy that the appellee is entitled to recover if he comes within the terms of its provisions.

The uncontradicted evidence shows that the appellee contracted an infectious disease from a patient while delivering her in childbirth, in the month of October, 1909. He was subsequently treated and attended by experienced physicians and specialists in Baltimore City, down to the 4th of April, 1911, when the disease resulted in the loss of sight of both of his eyes caused by bloodpoisoning, from the wound suffered in the professional operation testified to by the plaintiff.

All of the six medical experts who attended the appellee testified that the loss of his eyesight was a direct result of the syphilitic infection, by reason of the injury he had received in the professional operation; that there are different varieties of blood poisoning, and any of them will produce blindness if attacking the eye, and that syphilitic in-

fection such as the appellee suffered from produces blindness.

The notice and statement submitted by the plaintiff to the company on the 14th of March, 1911, is as follows: "On 7th of Oct., 1909, I was attending a woman in labor. I delivered her of a child suffering from syphilis; within two weeks a chancre developed on the middle finger of my right hand. I promptly began treatment, etc.; about April 10th, 1910, I developed disease of the eyes, the result of the syphilitic infection. Sight in left eye wholly destroyed, right eye impaired; enter hospital tomorrow, March 15, 1911."

The time and cause of the accident, the nature, extent and result of the injury received by the plaintiff as contained in his report to the company, is not only fully supported by his own testimony, but by the uncontradicted testimony of the eminent medical witnesses who testified in the case.

Dr. James Bordley, a specialist in eye treatment, testified that in March, 1911, the plaintiff came to him with Dr. Timberlake for an examination of the eyes. After speaking of several unsuccessful operations on his eyes, the doctor said his vision at this time is useless, and witness sees no prospect of its being better. The condition is a direct result of recent syphilis. Witness has seen many hundreds of cases of eye syphilis, and has never seen it develop under six months—usually about a year. Plaintiff's syphilitic infection is one phase of blood poisoning, resulting from infection by septic matter.

The testimony of Drs. Harlan, Timberlake, Simon, Barker, Lewis and Platt, specialists, who attended the plaintiff, is along the same line and to the same effect as that of Dr. Bordley.

The language of the rider attached to the policy in this case, we think, is clear and unambiguous and must be construed according to the sense and meaning of the terms which were used by the parties making it.

By its terms it extends the insurance clause of the policy to physicians or surgeons, and expressly stipulates that the insurance under this policy is extended to cover against death, loss of limb, or sight, total or partial disability caused by blood poisoning from septic matter introduced into the system through the wounds suffered in professional operations.

The object and purpose of the rider was to protect and secure indemnity against total or partial disability caused by blood poisoning from septic matter introduced into the system through wounds suffered in professional operations.

The undisputed facts disclosed by the record, we think, bring this case within the terms and meaning of "the rider" attached to the policy, and covers the claim provided for and the loss insured against in the policy.

Th appellant relies upon clause 12 of the policy, and contends that no written notice of the injury was given as soon as was reasonably possible.

Clause 12 of the agreement in the policy reads as follows: "Written notice must be given to the company at Baltimore, Md., or to the agent countersigning this policy as soon as may be reasonably possible, of any injury for which a claim is to be made, with full particulars thereof and full name and address of the assured or beneficiary, as the case may be. Affirmative proof of * * * , loss of * * * sight * * * , must be furnished to the company within two months from the time of * * * loss of * * * sight. Claims not brought in accordance with these agreements will be forfeited to the company."

While the accident or injury which resulted in the loss of the plaintiff's eyesight occurred in the month of October, 1909, the proof shows that it was not until March, 1911, he was satisfied that he would lose the use of his eyes. Manifestly he could not give notice of the loss of eyesight until that condition happened. Dr. Harlan testified that in some cases eye trouble follows syphilitic infection very soon, and

in others very late. The time between the infection and eye trouble was about a fair average. It would be very unusual for that condition of the sight to appear within ninety days from the primary infection.

Dr. Timberlake testified that the syphilitic infection from which the plaintiff is suffering is regarded as one form of blood poisoning, and this kind of blood poisoning did not usually manifest itself for a long period. Dr. Platt testified that the trouble with the background of the eye, where the plaintiff had the hemorrhage and detachment of the retina, would not be apt to occur within ninety days. It would occur after a year or two or three.

The words "as soon as may be reasonably possible," as used in accident insurance policies and relied upon by the appellant to defeat a recovery in this case, have frequently been before the courts for construction, and have been held to mean a reasonable time after the accident occurs under the facts and circumstances of the particular case.

In *McElroy* v. *Life Ins. Co.,* 88 Md. 148, it is said: "It may not reasonably be supposed that the holder of the policy could be required to give proof of a fact of which he was himself ignorant. To decide that one was not duly diligent, and that he lost his right as beneficiary because he did not give notice of a policy of which he knew nothing would be more strict and exigent than in our opinion the language of the policy requires. There was timely notice given after the fact of insurance came to the knowledge of the plaintiff. This delay in finding the policy was not strange and unexceptionable. On the contrary, it appears to have been entirely consistent with good faith."

The case of *People's Mutual Accident Association* v. *Smith,* 126 Pa. St. 317, is directly in point and resting upon somewhat similar facts to the case now under consideration. JUDGE PAXON, in delivering the opinion of the Court, after stating the facts, said: "It is our duty to give the policy in question a fair, business-like, common-sense

interpretation. It is in such sense that the parties to the contract probably understood it. The plaintiff was not claiming for weekly benefits. Had he done so, there would have been more force in the defendant's position that he should have given notice of the accident immediately after its occurrence on September 4th. His claim, however, was for the loss of his eye, and it is difficult to see how he could with any propriety make such a claim until he had actually lost it or it had become clear that he would lose it. How could he have truthfully made such a claim on the 5th of September? And had he done so and his eyesight been restored, the probability is the defendant company would have criticised his claim even more closely than it has done now.

"In the case of *Lyon* v. *Railway Passenger Assurance Co.*, 46 Ia. 631, the insured was injured whilst travelling on a railway train. He brought suit to recover a weekly allowance. By the terms of the policy he was required to give 'immediate notice to the company at Hartford, Connecticut.' The injury was received on September 27th, and notice was sent to the company at Hartford on October 28th, following, thirty-one days afterwards. During this time he was under medical treatment for eight or more days at one place, when he returned to his home and came under the treatment of other physicians. The Court held that under all the circumstances it was not error in the Court below to refuse to instruct as a matter of law that the notice was not given in proper time. The question was left to be determined by the jury as one of fact.

"It is true the delay in such cases may be so great as to justify the Court in ruling it as a question of law. There was no such delay in the case in hand, however. The word 'immediate' in the contract must be construed to mean a reasonable time thereafter, under all the facts and circumstances of the case, and what is a reasonable time must be decided by the jury, unless as before observed, the delay has

been so great that the Court may rule it as a question of law. A person might be so injured as to be physically unable to give notice for weeks. Hence it is that such questions are referred to the jury to say whether under all the circumstances there has been an unreasonable delay in giving notice. In the present case we are not required to go as far as the Court did in the *Iowa case*. I see no reason which requires notice to be given of the loss of an eye, until the eye is destroyed, any more than that in a life policy a man should give notice of his death bfeore he dies."

We think under the facts and circumstances of this case as disclosed by the proof that the notice given the defendant by the plaintiff dated in March, 1911, of the loss of eye-sight, was a sufficient notice within the meaning and in compliance with Clause 12 of the policy and that the plaintiff's demand was furnished within a reasonable and proper time.

The conclusions we have reached upon the law of this case disposes of the defendant's prayers and they need not be discussed. The several questions of law raised by the prayers have been disposed of by us against the appellant's contention and they were properly rejected by the Court below.

Finding no error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*