## BUCHER v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

No. 5687.   Decided December 18, 1936.   (63 P. [2d] 604.)

*Hurd & Hurd,* of Salt Lake City, for appellant.

*Willard Hanson* and *Stewart M. Hanson,* both of Salt Lake City, and *K. C. Tanner,* of Portland, Or., for respondent.

FOLLAND, Justice.

Plaintiff sued to recover disability benefits claimed to be due under the total and permanent disability provision of a

policy of group life insurance issued by the defendant society to the Union Pacific Railroad Company and its affiliated companies, including the Oregon Short Line Railroad Company by which the plaintiff had been employed. The case was tried to a jury. From a verdict in favor of plaintiff, defendant appeals. The policy in suit contained the following provisions:

"This policy is issued in place of group life insurance policies numbered 5170023; 5170024; 5170025; and 1626 previously issued and therefore the register date of this policy shall be deemed to be the first day of January, 1917, but this policy and the insurance hereunder shall take effect as of the first day of July, 1932."

"(Insurance Plan) (1) Employees insured on June 30, 1932, under policies numbered 5170023; 5170024; 5170025; and 1626; and, (2) employees who on June 30th, 1932, have been continuously in service with the companies whose employees are to be insured hereunder for at least one year or who shall thereafter complete such period of continued service shall be eligible for insurance in amounts determined in accordance with the following table."

The table referred to contains a schedule showing the amount of insurance an employee is entitled to purchase depending on the amount of his wages and ranging from $500 in insurance up to $3,500. The amount claimed by plaintiff was $1,800. The total and permanent disability provision is as follows:

"If proof shall be furnished the society that any employee insured under said policy has before attaining the age of 70, become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations and provided due proof of such disability is submitted before the expiration of one year from the date of its commencement, the society will pay in full settlement of all obligations under this contract pertaining to such employee, the full amount of the insurance on such life in five equal annual installments, the first installment to be payable six months after receipt of due proof of such permanent, total disability and the remainder annually thereafter."

It was alleged in the complaint and admitted by answer that defendant caused to be issued to plaintiff the certificate

attached to plaintiff's complaint which contains the following provisions:

"The Equitable Life Assurance Society of the United States hereby certifies that the Union Pacific Railroad Company and/or subsidiary and affiliated companies has contracted to insure the life of Ferdinand F. Bucher for the sum of eighteen hundred dollars with the Equitable Life Assurance Society of the United States, being a policy of group insurance."

"This certificate supersedes any non-contributory group insurance certificate heretofore issued to the employee hereinafter named."

The policy as between the railroad company and defendant society continued in force until May 31, 1933, during which time plaintiff paid to his employer his proportionate share of premiums due under the policy, the total amount of premiums being remitted by the railroad company to the society each month. At the time the policy took effect, a list of employees insured under the policy was furnished to the society by the employer and plaintiff's name appeared among the others on the list and was not subsequently reported in any other. Plaintiff, Bucher, went to work for the Oregon Short Line Railroad Company in August of 1908, and continued in employment from that time until July 6, 1931, when while employed he suffered a paralytic stroke which affected his right arm, neck, and face. From July 6, 1931, he did no work for and received no pay or compensation from the company, but his name was carried on the pay roll on leave of absence on account of sickness until December 29, 1932, when all connection with the company was terminated by it. The record then made by the employer shows that the cause for leaving the service was reduction of force. While so disabled and on leave of absence, plaintiff made application to his employer for insurance under the group policy of July 1, 1932, and his name was reported to the society with other employees entitled to insurance, and the certificate referred to was issued and delivered to him. No notice was given the society of plaintiff's disability

or that he was not then working for his employer but was on sick leave. In May, 1933, plaintiff made claim for disability benefits and furnished proof of total and permanent disability to the defendant society. The testimony of plaintiff tended to show that he had been wholly disabled from July 6, 1931, but that he did not know that such disability was a permanent disability until January, 1933. Plaintiff's theory is that notwithstanding total disability on July 6, 1931, such disability did not become a total and permanent disability so as to entitle him to insurance benefits until December of 1932, a time within the life of the policy and while he was insured thereunder, and that his proof of claim was timely filed because filed "before the expiration of one year from date of its commencement."

The first point urged by appellant is that plaintiff was not and did not become insured under the policy for the reason that he was not eligible for insurance on ■ the date the policy was issued as not being within either of the classifications therein described, these classes as stated in defendant's brief being as follows:

"(1) Those insured on June 30, 1932, under certain numbered policies; and (2) Those who on said date had been continuously in the service of the named companies for at least one year or who should thereafter complete such period of continuous service; employees otherwise eligible, but not working full time and for full pay not to be eligible until their return to active work full time and for full pay (second page of Policy, Exhibit 4), and employees on leave of absence on July 1, 1932, who had not previously been insured under the policy are eligible for insurance subject to the special provisions and the insurance plan of the policy (see rider attached to Policy, Exhibit 4)."

Defendant must fail in its contention for the reason that no issue was made with respect thereto in the pleadings. Possibly plaintiff was not eligible for insurance under classification (2) above stated, but may have been within classification (1). The record does not definitely show that he had theretofore been insured under the numbered policies mentioned. He alleged the issuance to him of an individual

certificate which was admitted by answer, which certificate contains the provision:

"This certificate supersedes any non-contributable group insurance certificate heretofore issued to the employee hereinafter named."

He testified he had worked for the company continuously since 1908, and stated he had paid insurance premiums during the period prior to July 1, 1932. It would naturally be inferred from the recital in the certificate, together with the fact of employment since 1908, and payment of insurance premiums prior to July 31, 1932, that he had been covered by some previous group policy. At any rate the answer of the defendant does not make an issue of this matter by alleging fraud, misrepresentation, or mistake on the part of plaintiff or his employer in the issuance of the certificate, nor did the defendant tender back the premiums paid. Defendant by answer recognized the relationship and sought to defeat recovery on grounds other than the cancellation or rescission of the insurance contract. The policy was primarily one of life insurance with an option in the employee to receive disability benefits under conditions and in the circumstances provided. The policy therefore could stand as a life policy unless successfully attacked for infirmity in its making even though the defendant might successfully defend as against any claim for disability benefits.

Next it is urged that plaintiff's disability was not covered by the policy. The policy states disability benefits are payable "if proof shall be furnished the society that any employe insured under the policy has * * * become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations." It is defendant's contention that under the evidence plaintiff became totally and permanently disabled on July 6, 1931, by reason of a paralytic stroke, and that therefore he could not have become totally and permanently disabled during the life of the policy and the risk of such disability was

not one which the society assumed under its policy. A further contention is made that even though the disability be regarded as not permanent on July 6, 1931, yet that was the date the disability commenced. Plaintiff's position is that when he became paralyzed on July 6, 1931, it was a total temporary disability he suffered, and that such disability did not acquire the character or status of permanency until December of 1932, at a time when the policy was in full force as to him. Defendant's argument is sound and would have to be sustained if it should be established that plaintiff became not only wholly but permanently disabled in July of 1931, or at any time prior to the effective date of the policy. It would not be a fair or reasonable construction of the policy to say it was the intention of the parties to insure against a condition already existing or to contract to pay a loss already accrued before issuance of the policy. *Harrod v. Sun Life Assurance Co. of Canada*, 49 Ga. App. 433, 176 S. E. 53; *Banks v. Clover Leaf Casualty Co.*, 207 Mo. App. 357, 233 S. W. 78; *Metropolitan Life Insurance Co. v. Walton*, 19 Tenn. App. 59, 83 S. W. (2d) 274; *Equitable Life Assurance Soc. of U. S. v. Powers*, 254 Ky. 770, 72 S. W. (2d) 469; *Smithpeters v. Prudential Insurance Co. of America*, 18 Tenn. App. 628, 81 S. W. (2d) 392.

The nature and extent of disability, and whether it is total or permanent, is a question of fact for the jury and the verdict will not be disturbed if there is competent evidence to support it. *Gibson v. Equitable Life Assurance Soc.*, 84 Utah 452, 36 P. (2d) 105, 106; *Steele v. New York Life Ins. Co.*, 87 Utah 63, 48 P. (2d) 436, 438. In the latter case this court said:

"Disability is a question of fact. Proof of disability is the procedure taken to establish such fact. One may be totally disabled for a period of time and not be permanently disabled."

That plaintiff was wholly disabled July, 1931, and was not able thereafter to resume work for his employer is not disputed. The controverted question was whether he be-

came permanently disabled, and, if so, at what time. These questions were presented to the jury by special interrogatories and were answered as follows:

"1. Did the plaintiff, Mr. Ferdinand F. Bucher, become wholly disabled by bodily injuries or disease from pursuing any and all gainful occupations as defined in these instructions, and if so, when (on what date)?. Answer: Yes. July 6, 1931.

"2. If you answer the foregoing interrogatory in the affirmative, and only in such event, answer the following interrogatory:

"Was Mr. Bucher's disability such or did it become such as will permanently, continuously and wholly prevent him for life from pursuing any and all gainful occupations, as defined in these instructions? Answer: Yes (2 jurors dissenting).

"3. If you answer the foregoing two interrogatories in the affirmative, state when (on what date or between what dates) if at all, Mr. Bucher's disability became permanent or such as to permanently, continuously and wholly prevent him for life from pursuing such occupations. Answer: December 1, 1932, and December 29, 1932.

"4. When (on what date) was Mr. Bucher's employment with his former employer, Oregon Short Line Railroad Company, terminated? Answer: December 29, 1932."

The interrogatories covered questions of fact which it is within the province of the jury to decide. The burden was on plaintiff to prove that his disability was both permanent and total and became such while the policy was in force. Unless he so proved and the jury so found, ■ there would be no liability under the policy. *Boyd* v. *Equitable Life Assur. Soc. of U. S.*, 274 Mich. 1, 263 N. W. 780; *Shipp* v. *Metropolitan Life Ins. Co.*, 146 Miss. 18, 111 So. 453; *Equitable Life Assur. Soc. of U. S.* v. *Singletary* (C. C. A.) 71 F. (2d) 409. It was not a question of when he became disabled or diseased, but when he became wholly and permanently disabled because of disease or injury. *Smith-peters* v. *Prudential Insurance Co. of America,* supra.

Closely related to the last problem is the contention that proof of disability was not submitted as or within the time required by the policy. The disability of which proof must

be furnished is one which wholly disabled claimant and will permanently, continuously, and wholly prevent him for life from pursuing any and all gainful occupations. The policy provides for payment of disability benefits when "due proof of such disability is submitted before the expiration of one year from the date of its commencement." Defendant contends that where as here nothing intervened to claimant to cause a new injury or affect the one already existing, such disability commenced when the claimant became totally disabled in July of 1931, that is, that the permanency of disability dates from the time of the inception of disability although not then known to be, or reasonably expected to be, of a permanent character, and that under the terms of the policy proof of disability must be submitted within one year of such inception or beginning of such disability. If this were true, the year would have expired before the policy sued on was written or became effective. We have already held that the time when disability becomes so fixed in character as to be permanent disability is a jury question. The jury in this case found such disability became permanent between the 1st and 29th days of December 1932. In the last-quoted policy provision, the phrase "date of its commencement" relates to "such disability," and that in turn refers back to the type of disability covered by the policy and for which benefits will be paid, namely, a disability which wholly and permanently disables the claimant from doing work. *Mutual Life Ins. Co. of N. Y.* v. *Wheatley,* 243 Ky. 69, 47 S. W. (2d) 961; *Illinois Bankers' Life Ass'n* v. *Byassee,* 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379. As we read the policy, total and permanent disability must occur at a time when the policy is in force as to the claimant and he must file due proof of claim within a year from the time when the disability became both total and permanent as defined in the policy. _

Counsel urges that due proof of disability is a condition precedent to liability and that it must be furnished to the insurer while the policy of insurance is still in force as to

claimant, that is, such proof should have been filed prior to December 29, 1932, when employment relations were severed between the railroad company and plaintiff. We find no provision in the policy that proofs must be furnished during the life of the policy. The stipulation is that proofs must be furnished "before the expiration of one year from the date of its commencement"; that is, commencement of the disability covered. There is no stipulation or provision that proofs must be furnished while the policy is alive as to the claimant. Counsel cites and relies on cases which involve provisions quite different from those in the policy before us. In *NewYork Life Ins. Co.* v. *Jackson,* 188 Ark. 292, 65 S. W. (2d) 904, 905, the policy provided, "whenever the company receives due proof, before default in the payment of premiums, that the insured * * * has become wholly disabled by bodily injury or disease" the company will waive premiums. The same is true of *Egan* v. *New York Life Ins. Co.* (D. C.) 60 F. (2d) 268. These are typical of the cases cited by the defendant. No such provision requiring proof to be filed before default in payment of premiums or before discharge or severance of the employment relationship or expiration of the policy can be found in the policy before us. Under the rule that a policy will be construed most strongly against the insurer, this policy will not be construed as making such a requirement in the absence of words clearly indicating such an intention.

Error is assigned to the overruling of objections and permitting of plaintiff to testify regarding statements made to him by certain physicians who treated him. These were company physicians of plaintiff's employer, and were not employed by or connected with the defendant society. Over objection he testified that these doctors in 1931 and 1932 made such statements as the following:

"I have done all I can but we will try Dr. Landenberger."

"You may be better, I am not sure."

"I believe you are a little improved at this time."

"I think you are getting better. I think I can get you back to work in time."

And in May of 1933 the following statements:

"Bucher you are through."

"I asked Dr. Landenberger, 'What does he mean when he says "I cannot go to work" ', and he says, 'You are not able to do nothing.' I said 'Why didn't you tell me this before, I didn't know it'. He said, 'We thought we could cure you.' "

Plaintiff's counsel stated the purpose of this evidence was to fix the time when the fact of permanent disability was made known to plaintiff so he could file due proof of total and permanent disability and claim disability benefits; that the statements made to the effect that he would get better tended "to show why he didn't make any proof" prior to the time of filing proofs. The objection was that it was hearsay, incompetent, irrelevant, and immaterial, and that not anything the doctors said to the witness would be binding on the defendant. The objection should have been sustained. The statements attributed to the doctors were clearly hearsay as to the defendant and in no way binding on it. The subject-matter is addressed to a most vital fact in controversy, namely, the time when the disability of plaintiff attained the quality of permanency. Under the issues, it is doubtful if it was material to prove when plaintiff was informed that his disability was permanent for the purpose of fixing a date for filing proof of disability. There was no dispute or issue on this phase of the matter. Appellant contended in the trial court and here that the proofs should be filed while the policy was in effect as to claimant, but the trial court held against him, and we think rightly. There was no allegation that plaintiff was in default and ought to be excused because of total incapacity as in the case of *Mutual Life Ins. Co.* v. *Johnson*, 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398, or because of want of knowledge or information. The policy provides proofs must be filed within a year of the commencement of such disability. There was controversy as to whether the year commenced to run from the

date of total disability, or from a later date when such disability became permanent, if it were not permanent from the beginning. The trial court rightly held this provision of the policy referred to the concurrence of total and permanent disability. There was no liability unless such condition became permanent at a time when the policy was in effect as to claimant. The policy became effective July 1, 1932. Proof of disability was filed in May of 1933. If, as counsel for respondent claimed and counsel for appellant denied, it was material to show when the claimant learned he would be unable to return to work or recover from his disability to the point where he could go to work, as bearing on the commencement of the running of time to furnish proofs, it was the fact and time of obtaining such knowledge that was material and not the conversations or expressed views of his medical consultants. Plaintiff was allowed to put before the jury the hearsay opinions of his medical advisers as to his condition, first that he might recover his health and later that he could not, without any limitation as to purpose. The fact to be established was the time when disability became permanent so that both elements of totality and permanency coexisted. Proofs would have to be filed within a year of that date. The time under the policy runs from the commencement of the total and permanent disability and not from the time when claimant is informed that his condition gives rise to liability. The error in admitting that evidence was undoubtedly prejudicial to the defendant entitling it to a new trial.

We are unable to find any evidence in the record supporting the third finding in the special verdict of the jury to the effect that the plaintiff's disability became permanent between December 1, 1932, and December 29, 1932. There is evidence that plaintiff was not informed by his physician until January of 1933 that he could not recover, but no witness testified that his disability was not a permanent disability prior to June 1, 1932, when the policy became effective, but became permanent between that time

and December 29, 1932, nor could that fact be deduced by any reasonable or logical inference from the evidence. This is illustrated by the following statement of the attorney for plaintiff made during the taking of the deposition of Dr. Lynn:

"For the purpose of shortening this record and the expenses incident thereto, we are willing to admit that Bucher had a total disability from 1931 and that judged by subsequent events, it was a fact that in 1931 he suffered a permanent disability, but that that fact was not known to this witness until January, 1933, as he testified."

There is an entire lack of evidence of any change of condition, or the happening of any event, which intervened to make the condition of disability permanent after plaintiff first suffered from the stroke in 1931. This is not a case where, as a result of accident or disease, a man is wholly disabled from work and the injury or sickness is such that he should shortly recover, but instead of recovery some unforeseen development occurred which changed his condition into one of permanent and total disability. Here the condition of paralysis continued without substantial change. The patient and his physician hoped that time and treatment would bring about a change for the better, but no such change occurred and the condition remained throughout as it was at the beginning, one of total and permanent disability. There was not sufficient evidence to submit the case to the jury on this issue.

Complaint is made of some of the court's instructions, particularly instruction No. 12 wherein the jury was instructed that even though claimant was totally disabled before the policy term began, if the disability became permanent while the policy was operative as to him, he would be ■ entitled to recover. This it is claimed is contradictory to one of the propositions contained in instruction No. 7 wherein the jurors were instructed that they must be convinced by a preponderance of the evidence of several propositions including this one (c) : .

"That while covered by said insurance contract and while entitled to the benefits thereunder he became totally and permanently disabled by bodily injuries or disease."

The proposition in instruction No. 12 was not contradictory to that in instruction No. 7, but in explanation thereof, and correctly stated the law.

Objection is made to the failure and refusal of the court to give a number of defendant's requested instructions. Only one of these need be discussed as the doctrines of law announced in the others have been disposed of by what we have heretofore said. Defendant's requested instruction No. 3 is as follows:

"You are instructed that the first question for your determination is whether or not plaintiff was at the time he is alleged to have become wholly disabled, and to have furnished proof thereof to the defendant, insured under the group policy in this action sued upon.

"In determining this question, you are instructed, as a matter of law, that plaintiff's insurance under said policy commenced on July 1, 1932, and terminated on the 31st day of December, 1932, when his employment with his employer, the Union Pacific Railroad Company, and its subsidiary, the Oregon Short Line Railroad Company, was finally terminated, and if you find from the evidence that plaintiff became or was wholly disabled by bodily injury or disease, so as to be permanently, continuously and wholly prevented for life from pursuing any and all gainful occupation, prior to July 1, 1932, or if you find from the evidence that plaintiff became so wholly disabled subsequent to December 31, 1932, your verdict must be for the defendant 'no cause for action.' "

Defendant was not entitled to have this instruction given as written. The first sentence contains the erroneous implication that proof must be furnished at a time while plaintiff was insured. The jury might well be instructed that if plaintiff became wholly disabled so as to be permanently, continuously, and wholly prevented for life from pursuing any all gainful occupation prior to July 1, 1932, or subsequent to December 29, 1932, the verdict should be for defendant. He is entitled to recover only if it be shown he became so disabled during the period the policy was effective as to him. It is sufficient if his proofs are filed within a year of

the time of commencement of such total and permanent disability.

The judgment of the trial court is set aside and vacated and the cause remanded to the district court of Salt Lake county for a new trial. Costs to appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and MOFFAT, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.