**Vaughn B. HUNTER, Plaintiff-Appellant,**

**v.**

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellee.**

**No. 383–70.**

United States Court of Appeals,
Tenth Circuit.

Sept. 29, 1971.

Richard W. Giauque, Salt Lake City, Utah (Clifford L. Ashton, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), for plaintiff-appellant.

Ray R. Christensen, Salt Lake City, Utah (Christensen & Jensen, Salt Lake City, Utah, on the brief), for defendant-appellee.

Before HILL and McWILLIAMS, Circuit Judges, and BRATTON, District Judge.

McWILLIAMS, Circuit Judge.

Dr. Vaughn B. Hunter, a Salt Lake City dentist, brought an action against the Fireman's Fund Insurance Company on a policy of accident insurance issued him by the Fund, alleging that he had sustained an accidental injury within the meaning of the policy when as the result of a fall from a stool in his dental office he suffered a detached retina of the left eye with the ensuing entire loss of sight in that eye. Trial was to a jury with the trial court, after evidence had been presented by both Dr. Hunter and the Fund, directing a verdict for the Fund.

In its formal judgment the trial court did not state its reasons for entering a judgment of no cause of action in favor of the Fund and against Hunter. However, in his extended colloquy with counsel in connection with the motion for a directed verdict interposed by the Fund after all the evidence was in, the trial judge clearly indicated that in his view the evidence was legally insufficient to warrant submission to the jury in each of the following particulars: (1) Insufficient evidence that the detached retina

with the resultant loss of sight in the left eye resulted from the fall from the stool and (2) insufficient evidence that Dr. Hunter had complied with the provisions of the policy regarding the giving of notice of claim and the furnishing of proof of loss.

We agree generally with the trial court that the evidence is legally insufficient as concerns Dr. Hunter's compliance with the provisions of the policy concerning the related matters of the giving of notice of claim and the furnishing of proof of loss. Being of that view, then, we need not here determine whether Dr. Hunter established prima facie that his loss of sight was caused by his fall from the stool.

Actually, as will become evident, we elect to turn our decision on the failure of Dr. Hunter to furnish proof of loss within the time prescribed by the policy. However, the provisions of the policy requiring the giving of notice of claim and the furnishing of proof of loss, though distinct and separate, are nonetheless related, and the consideration of one necessarily involves some consideration of the other. Furthermore, legal principles applicable to one frequently apply with equal force to the other. Hence, we will consider the provisions of the policy, and the evidence pertaining thereto, as such relate to both the giving of notice and the furnishing of proof of loss.

As concerns notice of claim, the policy provides that written notice of claim shall be given the Fund within twenty days after the occurrence or commencement of any loss covered by the policy or as soon thereafter as is reasonably possible. The policy then provides that written proof of loss must be furnished the Fund within 90 days after the date of loss for which claim is made. In this regard the policy goes on to provide that failure to furnish such proof within the 90 day period shall not invalidate nor reduce any claim if it was not "reasonably possible" to give proof within such time, provided such proof is thereafter furnished as soon as "reasonably possible" and in no event, except in the absence of

legal capacity, later than one year from the time proof of loss is otherwise required, i. e., 90 days after date of loss. It is noted that applicable Utah statutes require the inclusion in the policy of the provisions above referred to. Utah Code Ann. (1953), 31-33-3, 8 and 10.

It is agreed that as of the date of the alleged accident there was in full force and effect an accident policy wherein Dr. Hunter was the insured and the Fund was the insurer which provided among other things for the payment to the insured of $30,000 in the event of the loss of the entire sight of one eye as a result of an accident, with the further requirement that the "loss" must occur within 120 days after the date of accident. This particular policy had been sold Dr. Hunter by one Larry Moss, a general insurance agent in Salt Lake City. Dr. Hunter for some considerable period of time had apparently been dealing with Moss for all his insurance needs, including his home and office insurance, automobile insurance, professional liability insurance, and the like. Moss placed these several policies with different insurance companies, with the accident policy here in question being placed with the Fund.

The undisputed evidence established that Dr. Hunter had been experiencing at least some degree of "eye trouble" for some time prior to the accident here in question and that about two weeks before the fall from the stool he had cataracts removed from both eyes. As concerns the accident itself, Dr. Hunter testified that on March 30, 1965, while relaxing for a moment in his dental laboratory after a tooth extraction he proposed to sit on a stool and enjoy a coke and that in so doing he somehow missed the stool and fell to the floor, striking the left side of his head. His testimony was that within a matter of an hour or so the vision in his left eye became shadowy or cloudy and that by the following day when he went to San Francisco to undergo corrective eye surgery he had no sight whatsoever in his left eye. This entire loss of sight in his left

eye persisted, continuously and uninterruptedly, according to Dr. Hunter, from that time up to the time of his testimony at trial.

Immediately after the fall Dr. Hunter consulted an ophthalmologist in Salt Lake City who had treated him after the cataract removal above referred to. This doctor determined that the retina of the left eye was in fact detached and recommended corrective surgery. As indicated, the following day Dr. Hunter flew to San Francisco where a photo coagulation operation was performed in an attempt to fuse the detachment. This operation in a limited sense was successful in that it did succeed in attaching the retina, but the operation was unsuccessful in that because of macular changes following the detachment it did not restore sight to Dr. Hunter's left eye.

As mentioned, according to Dr. Hunter, he has suffered the entire and continuous loss of sight in his left eye since March 31, 1965. Insofar as postoperative treatment was concerned, upon his return from San Francisco Dr. Hunter was treated for about eight months by another Salt Lake City ophthalmologist. Dr. Hunter ceased going to this ophthalmologist on January 5, 1966, and he then went periodically to an optometrist, who was still examining him from time to time as of the time of trial. After a short period of convalescence following his return from San Francisco, Dr. Hunter resumed his practice of dentistry and was thus engaged as of the time of trial.

The testimony regarding the giving of notice of claim and the furnishing of proof of loss is not in any real dispute, as Dr. Hunter and his insurance agent, Larry Moss, are in general accord on the matter. Both agreed that on March 31, 1965, the day following the alleged accident, Dr. Hunter telephoned Moss and informed him that he (Dr. Hunter) "had a fall and had * * * apparently had a detached retina, in fact it was diagnosed as such" and that he was going to San Francisco for treatment.

Dr. Hunter also recalled that he made specific inquiry as to whether his "insurance covered any hospitalization." In this telephone conversation Dr. Hunter did not give a "notice of claim," as such, nor did he state that he had a loss of sight in his left eye. On cross-examination Dr. Hunter agreed that as a matter of fact as of the date of his telephone conversation with Moss "he did not know what the outcome was going to be." In this regard, as of that moment Dr. Hunter was of course hopeful that the corrective surgery would be successful and that his sight would be restored. Be all that as it may, this one telephone call was the *only* contact Dr. Hunter thereafter had with the Fund or its agents concerning the matter for the ensuing *three years*. It was not until April 1, 1968, that Dr. Hunter wrote the Fund requesting a proof of loss form. Such was sent Dr. Hunter by the Fund and the completed form was in turn mailed to the Fund on May 10, 1968. In due time Dr. Hunter's claim was denied and the present action was commenced on October 10, 1968, some three and one-half years after the accident.

The two issues which we deem to be depositive of this appeal are: (1) Did Dr. Hunter comply with the related provisions of the policy concerning the giving of notice of claim and, more particularly, the furnishing of proof of loss and, if not, (2) what is the legal effect of such noncompliance?

The answer to the first of these two questions is in reality resolved by a determination as to *when* the time within which Dr. Hunter had to file a notice of claim and furnish a proof of loss commenced to run. As indicated, the policy required that the notice of claim be given within 20 days after the occurrence or commencement of any loss covered by the policy or as soon thereafter as was "reasonably possible." Similarly, as concerns the furnishing of proof of loss, such was to be done within 90 days after the date of loss for which claim is made, with the further provision that failure to thus furnish a proof of claim

within the 90 day period would not invalidate the claim if it were not "reasonably possible" to thus furnish and if such proof were thereafter furnished as soon as "reasonably possible" and in no event later than one year from the time proof of loss was otherwise required.

It is the position of the Fund that the time within which Dr. Hunter was required to give notice of a claim and furnish a proof of loss began to run no later than shortly after the date of the unsuccessful retinal operation when it became evident that the corrective surgery, though it had reattached the retina, had not restored his lost sight. This surgery took place on or about April 5, 1965.

Dr. Hunter's position on this matter is that the time within which he had to file a notice of claim and to furnish a proof of loss did not begin to run until not only had he permanently lost the entire sight in his left eye but until such time as he himself knew and realized that his eyesight would never be recovered. In this regard Dr. Hunter testified that it was not until the spring of 1968 that he concluded that his loss of sight was "irrecoverable," and under his theory this is when his time began to run both as to the giving of notice of claim and the furnishing of proof of loss. As concerns the notice of claim, Dr. Hunter also contends that in any event his telephone call on March 31, 1965, constituted the giving of a notice of claim and that his proof of loss was timely furnished from and after the date he realized his loss of sight which he had experienced for three years was "irrecoverable." The Fund argues that the telephone call of March 31, 1965, did not comply with the provisions of the policy concerning the giving of notice of claim and that the furnishing of the proof of loss in May 1968 was not within 90 days from the "date of loss" and that there was nothing to indicate that the furnishing of such proof was not "reasonably possible" within such time.

Assuming without deciding that Dr. Hunter's telephone call to Moss on March 31, 1965, constituted the giving of notice of claim to the Fund, in our view of the matter Dr. Hunter thereafter failed to furnish a proof of loss within the time provided by the policy and offered no legal excuse for this failure. In other words, we agree with the position advanced by the Fund that the time within which Dr. Hunter had to furnish his proof of loss began to run from the date of his irrecoverable loss of sight, which according to the evidence occurred within a week or so after the accident and of course had to occur within 120 days after the fall in order to come within the terms of the policy. See Bucher v. Equitable Life Assur. Soc., 91 Utah 179, 63 P.2d 604 (1936), where it was held that under a group life insurance policy providing for payment of disability benefits on submission of proof of such disability before expiration of one year from date of its commencement, the insured must file proof of claim within a year from date when disability became total and permanent. Accordingly we reject as untenable the position of Dr. Hunter that his time to furnish proof of loss did not begin to run till some three years after the accident when he allegedly first realized that his loss of sight was irrecoverable.

In support of his contention that the time within which he was required to file a proof of loss did not begin until the spring of 1968 when he allegedly realized for the first time that his loss of sight was irrecoverable, Dr. Hunter relies heavily on Maryland Casualty Co. of Baltimore v. Ohle, 120 Md. 371, 87 A. 763 (1913). Although it is not entirely clear, from our reading of that case it would appear that the insured gave the insurance company notice of loss promptly after there was an actual loss of sight, though such notice was more than two years after the "accident" which eventually culminated in the loss of sight. We do not read that case as standing for the proposition that the giving of notice or the furnishing of proof of loss more than two years after a total loss of sight meets a policy re-

quirement that such be done as soon as is reasonably possible and that failure to sooner give notice and to furnish proof of loss is excused merely because the insured for that period of time deemed his loss of sight to be recoverable. In any event, we are not impressed with Maryland Casualty Co. of Baltimore v. Ohle, *supra*, and we conclude that Dr. Hunter, having suffered the irrecoverable entire loss of sight in his left eye within a matter of a very few days after his fall on March 30, 1965, could not delay the filing of his proof of claim for nearly three years on the ground that he personally did not admit or realize his loss was irrecoverable. *See* Haack v. Midwest Life Ins. Co. of Lincoln, 131 Neb. 501, 268 N.W. 360 (1963), where it was held that the failure to timely file a proof of loss precluded recovery on an accident policy when the only excuse offered was that the insured hoped to regain his eyesight. *See,* also, in this general regard, MacKay v. Metropolitan Life Ins. Co., 281 N.Y. 42, 22 N.E.2d 154 (1939) and McClain v. National Life & Accident Ins. Co., 96 S.W.2d 836 (Tex.Civ.App.1936).

■ Having determined that the time within which Dr. Hunter was required to file a written proof of loss began to run shortly after March 30, 1965, the policy provides that proof should be filed within 90 days after the date of loss, if the same be reasonably possible. As indicated, proof of loss was not filed till May 1968, so obviously the 90 day requirement was not met. And there is nothing in the record that suggests that it was not reasonably possible for Dr. Hunter, who according to his own testimony during the 90 day period here in question was wholly without sight in his left eye, to have furnished proof of loss within the 90 days. Suffice it to say that Dr. Hunter did not furnish his proof of loss within the time required by the policy and the excuse offered for his failure in this regard is ineffectual. *See* Dunn v. Metropolitan Life Ins. Co., 100 Utah 111, 110 P.2d 561 (1941).

■ The final matter to be resolved is the effect of Dr. Hunter's noncompliance with the proof of loss requirement of the insurance policy. The policy provisions relating to the furnishing of proof of loss would appear quite clearly to make compliance therewith a condition precedent to recovery on the policy. In that regard, the policy provides that failure to furnish proof of loss within 90 days after the date of loss will not invalidate a claim if it was not reasonably possible to give proof within that time, provided that such proof is thereafter furnished as soon as reasonably possible, and in no event more than one year from the time such proof is otherwise required. The plain import of such language is that a failure to furnish proof of loss within 90 days when it was reasonably possible to so do would invalidate a claim.

■ Additionally, as above indicated, the related provisions in the policy concerning notice of claim and proof of loss are included therein by virtue of applicable Utah statutes requiring the inclusion of such. The general rule is that where a state statute has been enacted concerning the giving of notice and the furnishing of proof of loss to the insurer, the failure to comply with a requirement of a policy in respect thereto which conforms to the statute will defeat recovery on the policy. See 44 Am.Jur.2d Insurance § 1454–5 (1969) and 13 Couch on Insurance 2d., 642–3, 649. This general rule would appear to be in line with Utah authority to the general effect that failure to comply with the requirements of an insurance policy concerning giving of notice of claim and furnishing of proof of loss will in the absence of waiver or estoppel defeat recovery on the policy. *See* Dunn v. Metropolitan Life Ins. Co., *supra,* and Anderson v. Beneficial Fire & Casualty Co., 21 Utah 2d 173, 442 P.2d 933 (1968).

■ There is some suggestion that there is no need for making proof of loss a condition precedent where timely

notice of the accident has been given. In this regard we would simply note that though notice of claim and proof of loss have similarities, the two are distinct and the fact that notice may have been given does not dispense with the requirement of furnishing formal proof of loss. 14 Couch on Insurance 2d., 23–4, citing Conlon v. Northern Life Ins. Co., 108 Mont. 473, 92 P.2d 284 (1939) and Georgia Home Ins. Co. v. Jones, 23 Tenn.App. 582, 135 S.W.2d 947 (1937).

For these reasons we conclude that the trial court was eminently correct in holding as a matter of law that Dr. Hunter did not comply with the requirements of the policy concerning the furnishing of proof of loss and that such noncompliance defeats any recovery on the policy issued him by the Fund. Having thus concluded, we need not here concern ourselves with the other grounds relied on by the trial court in directing a verdict for the Fund.

Judgment affirmed.