611 F.2d 338
 Marc N. MASCARO, as Receiver for American Stock Transfer
Company, a Utah Corporation, Plaintiff-Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY, of the Fireman's Fund
American Insurance Companies, a California
Corporation, Defendant-Appellee.
 No. 78-1192.
 United States Court of Appeals, Tenth Circuit.
 Argued Aug. 18, 1979.
Decided Dec. 12, 1979.
 
 Hardin A. Whitney, Salt Lake City, Utah (Reid E. Lewis of Moyle & Draper, Salt Lake City, Utah, on the brief), for plaintiff-appellant.
 Raymond M. Berry, Salt Lake City, Utah (Scott Daniels of Snow, Christensen & Martineau, Salt Lake City, Utah, on the brief), for defendant-appellee.
 Before SETH, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is the second time this case has been before us, and we recognize that quite possibly it is not the last time we will be asked to review this dispute between the Receiver for American Stock Transfer Company, a now defunct Utah corporation, and Fireman's Fund Insurance Company, a California corporation. The case concerns a blanket fidelity bond issued American Stock by Fireman's Fund. The trial court granted the Fund's motion for summary judgment and entered judgment dismissing the Receiver's action. We reverse, in part, as we are convinced that the Receiver has not yet had his day in court.
 
 
 2
 The background facts in capsule form are: The Fund issued American Stock a blanket fidelity bond insuring against loss occasioned by any fraudulent acts of its employees; between October, 1972 and June, 1973, employees of American Stock fraudulently issued unauthorized shares of stock which belonged to Flying Diamond Oil Corporation, one of American Stock's customers; Flying Diamond, whose stock had thus been fraudulently placed on the market, and sold, brought suit against American Stock and some time later obtained judgment against American Stock in the sum of $785,326.42; at a time when the Flying Diamond action against American Stock was pending, American Stock went into receivership, and the Receiver immediately commenced the present action against the Fund on the fidelity bond, seeking judgment in the sum of $500,000, the maximum amount recoverable under the terms of the policy.
 
 
 3
 As indicated, American Stock was placed into receivership by a Utah state court on June 4, 1975, when its corporate charter was dissolved for failure to pay franchise taxes due the State of Utah. The next day the Receiver instituted the present action against the Fund pursuant to authority granted by the state court. The action was based on the fidelity bond issued American Stock by the Fund, which bond was admittedly in effect at the time of the fraudulent acts of American Stock's employees. As a result of the fraudulent acts of American Stock's employees, the Receiver alleged that American Stock had suffered a loss in two particulars: (1) loss of monetary income from certain customers who cancelled their stock transfer accounts with American Stock when the fraud became publicly known; (2) potential liability on the part of American Stock in the then pending action between it and Flying Diamond.
 
 
 4
 The Fund by answer denied liability on several grounds, including a failure to comply with the proof of loss provisions in the policy. Such provisions read as follows:
 
 
 5
 Section 7. Upon knowledge or discovery of loss under this Bond, the Insured shall: (a) give notice thereof as soon as practicable to the Underwriter or any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months after the discovery of loss.
 
 
 6
 * * * No action shall lie against the Underwriter unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Bond, nor until ninety days after the required proofs of loss have been filed with the Underwriter, nor at all unless commenced within two years from the date when the Insured discovers the loss. * * *
 
 
 7
 The Fund filed a motion for summary judgment based (1) on the failure to comply with the terms of the bond concerning proof of loss; (2) on the failure to start legal proceedings within two years from the discovery of the loss; and (3) on the ground that the "loss" claimed is not a loss of money or property within the meaning of the bond. The only evidentiary matters before the trial court at the hearing on the motion for summary judgment were some answers by the Fund to interrogatories of the Receiver, some documents produced by the Fund in response to Receiver's motion to produce, and an affidavit of a Fund officer. After hearing, the trial court granted the Fund's motion for summary judgment insofar as it related to the Receiver's claim for loss of business. The basis for this particular holding was that inasmuch as no proof of loss had been filed prior to commencement of the present action, there was no compliance with the provisions of section 7 of the bond set forth above.
 
 
 8
 As concerns that part of the Receiver's claim which was based on the potential liability of American Stock to Flying Diamond in the then pending action between those two parties, the trial court held that this particular claim was premature, since as of that time no judgment had been entered against American Stock in favor of Flying Diamond, and that any "loss" would not be incurred by American Stock until judgment was entered against it. The trial court dismissed this particular claim without prejudice.
 
 
 9
 Both the Receiver and the Fund filed timely motions to amend judgment. In his motion the Receiver alleged that two days after summary judgment was entered in the instant proceeding, a judgment was in fact entered in favor of Flying Diamond against American Stock in the sum of $785,326.42, and that accordingly the "loss" to American Stock was no longer "contingent." The motion to amend filed by the Fund was based on the belief that, notwithstanding the earlier ruling of the trial court, any "loss" to American Stock occurred when the fraud was discovered, and in no event later than June, 1973, and that accordingly there was a failure to comply with the proof of loss provisions of the policy not only as to the claim based on loss of business, but also as to the claim based on the liability of American Stock to Flying Diamond.
 
 
 10
 After hearing the trial court denied the Receiver's motion to amend judgment and granted the Fund's motion. In thus holding, the trial court concluded that it had been in error in its earlier ruling that the date of loss would be the date that any judgment was entered against American Stock in favor of Flying Diamond. It concluded that the correct date of loss was the date when the fraud was discovered, which was some time in June, 1973. In so holding, the trial court relied on Mount Vernon Bank & Trust Co. v. Aetna Casualty & Surety Co., 224 F.Supp. 666 (E.D.Va.1963). Based, then, on a failure to comply with the proof of loss provisions of the insurance policy, the trial court entered summary judgment in favor of the Fund on the Entire claim of the Receiver.
 
 
 11
 The Receiver appealed the summary judgment thus entered in favor of the Fund. On appeal, by order, we vacated the summary judgment and remanded the case to the trial court with directions to consider and determine whether the fact that American Stock had been placed in receivership had any effect, under Utah statutes, on the time period within which the Receiver could bring suit on the bond. On remand, with opposing counsel in apparent agreement, the trial court held that Utah statutes had No impact on the time period within which the Receiver could maintain an action on the fidelity bond, and re-entered summary judgment in favor of the Fund. The Receiver now appeals from this second summary judgment in favor of the Fund.
 
 
 12
 On appeal the Receiver does not really argue for reversal of the summary judgment entered in favor of the Fund on the Receiver's claim based on an alleged loss of business. No doubt this is so because the "loss" which American Stock sustained because of the fraud perpetrated on Flying Diamond is far in excess of the policy limitation. The Receiver's brief is directed to the "loss" suffered by American Stock as a result of the latter's liability to Flying Diamond. Thus, we deem the present appeal to be limited to that particular claim, and accordingly the portion of the trial court's judgment dismissing the claim based on loss of business is affirmed. We regard the two claims to be distinct.
 
 
 13
 On appeal, the Receiver does challenge, however, that part of the trial court's judgment which entered summary judgment for the Fund on the Receiver's claim based on an alleged loss sustained by American Stock by virtue of its liability to Flying Diamond.
 
 
 14
 There was a dispute below between the parties as to whether the loss occurred when the fraud was discovered, i. e., sometime in June, 1973, or the date when Flying Diamond received judgment against American Stock, i. e., December 12, 1975. The trial court held that the loss occurred when the fraud was discovered. That ruling is not challenged in this appeal, and under such circumstance it then becomes the law of the case.
 
 
 15
 The trial court held that no proof of loss was filed prior to the commencement of the present proceeding. During the course of the litigation between Flying Diamond and American Stock, counsel for the latter apparently forwarded a copy of the complaint in that proceeding to the Fund. It is suggested here that such acts fulfill the proof of loss requirement. The trial court implicitly rejected such suggestion by its holding that No proof of loss was filed prior to institution of the action by the Receiver against the Fund. We agree that absent other circumstances the mere act of forwarding a copy of Flying Diamond's complaint to the Fund does not constitute filing of a proof of loss in the manner required by section 7 of the insurance contract. The delivery of the copy of the Flying Diamond complaint to Fund may nonetheless have bearing on the related issues of waiver and estoppel.
 
 
 16
 Section 7 of the insurance policy requires that a detailed proof of loss, duly sworn to, be filed within four months after discovery of the loss. The trial court, applying Utah law, held that such failure to file within four months after June, 1973, was not itself fatal, but that the failure to file Any proof of loss prior to commencement of the action was fatal. In thus holding, the trial court emphasized that part of section 7 of the insurance policy which declares that no action may be brought until ninety days After the proof of loss has been filed. The trial court reasoned that since the present action was commenced June 5, 1975, American Stock had until some time in March, 1975 to file its proof of loss statement. In this regard it noted that not only had no statement been filed by March, 1975 but, according to the affidavit of a Fund officer, none had been filed as of August 6, 1975. In support of its resolution of the matter the trial court relied on Stewart v. Commerce Ins. Co., 114 Utah 278, 198 P.2d 467 (1948), wherein appears the following:
 
 
 17
 (T)he requirements of an insurance policy that the insured shall give notice and furnish proof of loss within a certain time are conditions precedent to the right to sue, but failure to comply with such requirements within the time stipulated does not void the policy or work a forfeiture in the absence of a stipulation in the policy to that effect. Such failure merely postpones the day of payment, Provided notice is given and proofs of loss are furnished within such time as will enable the insured to bring his suit within the time limited by the policy. (Emphasis added.) 198 P.2d at 472.
 
 
 18
 The fact that no proof of loss was filed before commencement of suit does not in our view necessarily end the matter. There remain for consideration such matters as legal excuse, waiver and estoppel, none of which has as yet been considered by the trial court. The Receiver contends, for example, that American Stock was excused from filing a proof of loss statement because of legal impossibility of performance. In this regard the Receiver argues that in this case the very persons who would file the proof of loss statement, including the president of the company, were the persons who had themselves perpetrated the fraud in the first instance. Counsel for the Fund in his brief concedes that American Stock would be excused from filing a proof of loss statement If such a filing was "impossible" in the legal sense of that word. Counsel then argues that to constitute legal excuse for the nonperformance of a condition, performance must be truly impossible, and not just difficult. Without further elaboration on this matter, we are of the view that the issue of whether American Stock had a legal excuse for not filing a proof of loss in accord with section 7 is a matter that cannot be resolved on motion for a summary judgment. Whether performance in the instant case was legally impossible, or only difficult, strongly suggests the need for an evidentiary hearing.
 
 
 19
 Similarly, the Receiver contends here, as he did in the trial court, that since the Fund had knowledge of Flying Diamond's action against American Stock, and that American Stock was looking to the Fund for indemnification, the Fund thereby waived compliance with the proof of loss requirement and is now estopped from asserting such noncompliance as a ground to defeat the Receiver's cause of action. Again, we do not believe that the twin issues of waiver or estoppel can be resolved on motion for summary judgment. We of course recognize that there was limited evidentiary matter before the trial court. Such in our view, however, is inadequate to resolve such issues as legal excuse, waiver and estoppel. These issues, though referred to in the memorandum brief of counsel, were not mentioned by the trial court in its orders granting summary judgment.
 
 
 20
 The Fund argued in the trial court that the alleged loss was not a loss within the terms of the policy. The trial court did not base its summary judgment on that proposition. Rather, the basis for the trial court's summary disposition of the case was the failure to file a proof of loss statement within the time and in the manner prescribed in section 7 of the insurance policy. Although we agree that no such statement was filed, there remain the issues of legal excuse, waiver and estoppel, none of which has yet been considered by the trial court and none of which would seem to lend itself to summary judgment.
 
 
 21
 Hunter v. Fireman's Fund Insurance Company, 448 F.2d 805 (10th Cir. 1971), relied on here by the Fund, is not really supportive. In Hunter we held that under Utah law failure to comply with a policy requirement concerning furnishing a proof of loss statement will defeat recovery on the policy, In the absence of waiver or estoppel. So, in Hunter we recognized that failure to file a proof of loss statement would not necessarily defeat recovery on the policy if waiver or estoppel is present. In Hunter the trial court directed a verdict in favor of the Fund after all the evidence was in, one ground for the action thus taken being the failure to comply with the policy requirement regarding the giving of notice and the furnishing of a proof of loss statement. Unlike Hunter the instant case was disposed of on motion for summary judgment.
 
 
 22
 The judgment as it relates to Receiver's claim for loss of business is affirmed. The judgment is otherwise reversed and case remanded for further proceedings consonant with the views herein expressed.