# STEWART v. COMMERCIAL INS. CO
## OF GLEN FALLS, N. Y.

No. 7078.   Decided October 19, 1948.   (198 P. 2d 467.)

See 45 C. J. S., Insurance, sec. 829; 29 Am. Jur. 668. Insurance covering damage to automobile by accident or collision, note, 105 A. L. R. 1426.

*L. E. Nelson* of Logan, for appellant.

*Thatcher & Young,* of Ogden for respondent.

LATIMER, Justice.

This is an appeal from a judgment of no cause of action rendered by the First District Court in an action by plaintiff as administrator of the estate of Fred W. Richards, deceased. The controversy arises over the question of whether or not the defendant is liable on a contract of insurance in which it agreed to pay the deceased any loss he might suffer as a result of damages done to his car in a collision. The parties will be referred to as they appeared in the court below.

The facts are largely undisputed and, insofar as material to this decision, are as follows:

On the 20th day of December, 1944, the defendant issued its insurance policy to deceased, Fred W. Richards, for a period of one year commencing on the 20th day of December, 1944, and ending on the 20th day of December, 1945. One of the provisions of the policy provided that if the insured should die within the policy period, if written notice were given to the company within 60 days after the day of such death, the policy would cover the insured's legal representative. The insured died intestate on December 7, 1945, leaving as his surviving heirs six adult children. His property, as far as disclosed by the record, consisted of a Graham automobile, which was the car insured by the defendant.

It appears from the evidence that the heirs of Richards were desirous of disposing of the automobile and one of the heirs, a Mrs. Stevenson, who resided in Salt Lake City and who had possession of the car, had certain dealings with one Clare Spackman for the purchase of the automobile. Mr. Spackman came to Salt Lake City on December 18th, 1945 for the apparent purpose of purchasing the automobile. After examining the car, he decided to pur-

chase the same and he and Mrs. Stevenson discussed the terms of the sale but did not definitely agree upon the purchase price as they were unable to determine the O. P. A. ceiling price for that type of automobile. It was orally agreed between Mrs. Stevenson and Spackman that Spackman would pay $400 cash to her, take the car to Logan, Utah, and complete the arrangements with other interested heirs for the purchase price of the car. The surviving heirs in Logan were to determine the O. P. A. ceiling price and the other steps necessary to comply with the statutory requirements for transfer were to be taken by Spackman after arriving at Logan.

Prior to the time Spackman left Salt Lake City, Mrs. Stevenson delivered to Spackman the title and registration certificates which were in her possession. The certificate of title was introduced in evidence and the name of the deceased appears thereon. The evidence does not definitely establish who signed the endorsement on the certificate of title. However, it appears the deceased's signature was not acknowledged.

Spackman took possession of the car and proceeded to Logan, Utah. En route the car skidded off the highway and was damaged to such an extent as to make repairs impracticable. The evidence in the case shows it had only a salvage value of $100.00. Spackman consulted his father-in-law William H. Stewart, who was engaged in the real estate and insurance business in Logan. Stewart is a son-in-law of deceased and the plaintiff in the present action. Apparently as a result of the consultation on December 20, 1945, plaintiff, who was not then the administrator of the estate of deceased, wrote a letter to the Utah Realty & Construction Company, an agent of defendant company, informing the company that on December 18, 1945, the deceased's automobile had been purchased by Spackman and requested that defendant transfer the policy to Spackman's name. The letter further informed defendant's agent of the accident, the damage to the car, and that the car would be held in a

Logan garage until it could be inspected by an insurance adjuster. The Utah Realty & Construction Company replied by mail on December 24, 1945, informing plaintiff that there was no record of an application for transfer for the policy in its office, but that nevertheless the case had been referred to an adjuster for investigation. On December 28, 1945, one Yancey, an adjuster acting for the defendant, proceeded to Logan to make an investigation of the accident. On this trip Mr. Yancey consulted with Stewart and after making some investigation, mostly concerning transfer of title, informed him that it was doubtful the company would pay the loss to anyone because title to the car had been transferred to Spackman by Richards' heirs, and that this transfer relieved the company of any liability. He promised to correspond with the defendant and notify Stewart as to the decision of the company.

Not having heard from defendant or any of its agents, and after waiting more than a reasonable length of time, Stewart wrote a second letter to the Utah Realty & Construction Company. This letter was written on February 18, 1946, some 50 days after Yancey's visit to Logan. This letter was apparently forwarded to defendant's San Francisco office, as on March 1, 1946, defendant acknowledged the receipt of the letter and notified plaintiff that Mr. Yancey would again contact him in regard to the claim. Nothing was said in this letter about denying liability and the interested parties were still left in doubt about the necessity of taking affirmative action.

Mr. Yancey failed to contact Stewart, but on June 3rd, 1946, he dispatched a letter to Mr. L. E. Nelson, attorney for the estate, in which liability was denied. In this letter of June 3, 1946, defendant for the first time positively notified plaintiff it was refusing to pay the loss and gave as its reasons that the estate had no insurable interest in the car as the heirs had sold the automobile and transferred title to Spackman, and that Spackman not being an insured,

was a stranger to the contract and no payment could be made to him.

On the 22nd day of May, 1946, plaintiff was appointed administrator of the estate of Fred W. Richards, deceased, and after receipt of defendant's letter of June 3, 1946, he commenced an action for recovery of the loss.

The defendant by its answer denied liability on four grounds:

(a) Failure to give notice to the defendant of the death of the insured as required by the terms of the policy.

(b) That title to the automobile had passed to Spackman and the estate had no insurable interest in the car at the time of the collision.

(c) Failure to furnish defendant with notice of the accident in accordance with the terms of the policy; and

(d) Failure to furnish proof of loss within 60 days after the accident as required by the terms of the policy.

Plaintiff in reply alleged that defendant waived strict compliance with the terms of the policy and particularly the proof of loss because the defendant, by its acts and conduct, had waived its right to insist on absolute performance.

The trial court found in favor of the defendant on the four grounds raised by its answer. If the findings of fact no mention is made of the claim made by plaintiff that strict compliance had been waived. Judgment was rendered in favor of the defendant and from the judgment plaintiff appeals.

Little need be said on those defenses enumerated in subsections (a) and (c) hereinabove set forth. This for the reason that the defendant company received written notice of the death of Richards and the damage to the car. Two days following the accident, a letter was directed ■ to the Utah Realty & Construction Company, one

of defendant's" state agents, notifying it of the damage to the car. This company was an authorized state agent of the defendant and by the terms of the policy, notice of loss may be given to such an agent.

The policy provides that in the event of the death of the insured, coverage may be extended to his legal representative, if written notice of the death is given to the company within sixty days after the death. Richards died on December 7, 1945, so that coverage would be extended to his legal representative from this date until the policy expired on December 20, 1945, provided written notice of Richards' death was given to the company prior to February 5, 1946. The Fire Company's Adjustment Bureau, an independent adjusting company, was employed by the defendant company to investigate the loss and Yancey, one of its adjusters, investigated the accident on December 28, 1945. He obtained the facts concerning the death of the insured, the attempted sale of the car and such other information as he deemed pertinent. Shortly following this investigation, he made a complete written report to the company giving full details about the death of Richards. This notice meets the requirements of the policy.

The defendant company, in its answer, does not deny receiving written notice. What it does allege is as follows:

"On the 7th day of December, 1946, Fred W. Richards, the insured named in said policy died and no written notice of such death was given to the company as soon as practicable after such death, or at all, until after the expiration of the effective period of the said policy, and then notice was not given by anyone authorized to speak for the estate or for the heirs of said decedent."

We do not believe it important as to who forwards the written notice of the death, particularly when the company not only admits having received it, but in addition uses the information contained in the written report as the basis for denying liability. In this case the defendant, when the first report was forwarded by Yancey, raised a question

about its liability, at least partially on the fact that it had received notice the insured was dead and the heirs had transferred the title to the car.

Neither do we believe that notice of death must be given within the effective period of the policy. Our interpretation of this provision is that if the loss occurs prior to the last day of the policy period, the legal representative is protected regardless of the fact that the policy period may have ended before the notice of death is mailed. The coverage is limited to the termination date, and the loss must occur before that time. However, if an accident happens within the policy period, the expiration of the period does not shorten the time in which notice of death must be given.

Defendant upon this appeal relies chiefly upon its defense that title to the automobile passed to Spackman and therefore the estate had no insurable interest in it at the time of the accident. In support of its argument, defendant cites the recent case of *Jackson* v. *James,* 97 Utah 41, 89 P. 2d 235, wherein we held that the statute did not prevent an inter vivos gift from husband to wife even though there was failure to comply with the statutory registration requirements.

While in that case it was held that title could pass without having complied with all the necessary statutory steps, the rule announced in that case is not controlling here. This case presents a different factual picture and there are other statutes of this state which are involved in this litigation and which were not involved in the decision of that case.

Section 57-3a-72, U. C. A. 1943 provides:

"Until the department shall have issued such new certificate of registration and certificate of ownership, delivery of any vehicle required to be registered shall be deemed not to have been made and title thereto shall be deemed not to have passed, and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose except as provided in section 76 of this act."

Section 57-3a-70, U. C. A. 1943, provides as follows:

"In the event of the death of an owner or lien holder of not more than one motor vehicle, trailer or semitrailer registered hereunder and not exceeding the value of $1,000, without leaving other property necessitating the procuring of letters of administration or letters testamentary, then the surviving husband or wife or other heir in the order named in section 10-4-5, Revised Statutes of Utah, 1933, may secure a transfer of the registration of the title or interest of the deceased in and to such vehicle to the name of the surviving husband or wife or other heir, as above mentioned, upon filing with the department an affidavit of such person setting forth the fact of such survivorship, the names and addresses of any other heirs and such other facts as are hereby made necessary to entitle the affiant to a transfer, and thereupon the department is authorized to make such transfer of the registration of such vehicle."

This latter section has for its purpose the simplification of transferring the title to an automobile, if there are no other assets in the estate, and, if the value of the car does not exceed the sum of $1,000. The right to proceed under this section is given to the husband or wife or other heir in the order named in Section 10-4-5, R. S. U. 1933. (Obviously, Section 57-3a-70, U. C. A. 1943, intended to refer to Section 101-4-5, R. S. U. 1933.)

The facts of this case fail to show any attempt to comply with the provisions of this latter quoted section. There were six heirs who survived the deceased and no attempt was made to transfer the title to any one of them or to have all join in the conveyance to Spackman. The purchaser had dealings only with Mrs. Stevenson, one of the heirs, and was told he would have to complete the transaction by dealing with the others. We need not discuss the effect of a partially completed transaction as no affidavit was executed or filed with the Department of Registration setting forth the information required by Section 57-3a-70, U. C. A. 1943. If, under the statute, it is permissible for a group of heirs to directly transfer the automobile to a third person, then it is necessary before title passes that they substantially

comply with the other requirements of the statute. There is evidence that there were six heirs.

When Section 57-3a-70, U. C. A. 1943, is considered in connection with Section 57-3a-72, U. C. A. 1943, it is apparent that no valid sale was completed. If such is the case the fact that an abortive attempt was made, ■ would not relieve the defendant from liability under the policy, as the estate would have an insurable interest in the car until such time as a completed sale was effectuated.

The question of failure to furnish a proof of loss presents a more serious problem. The court found, and there is no evidence to the contrary, that the proof of loss was not filed within 60 days after the accident. In fact, there is no contention made by plaintiff that any proof of loss has ever been filed. His contention is that the furnishing of this proof of loss was waived by the defendant. We believe there are two reasons why this contention must be sustained. First, the furnishing of a proof of loss is only a condition precedent and defendant, through its agent, Yancey, led the parties to believe no action need be taken until the company acted on his report and then delayed giving information to the interested parties as to its acceptance or rejection of liability until long after the 60 day period had expired. And, second, that the defendant company denied liability on grounds other than failure to furnish proof of loss and is there estopped to claim that proof of loss was not furnished prior to suit.

Treating the second of these grounds first, it is a well recognized rule that a denial of liability by an insurance carrier made during a period prescribed by the policy for the presentation of proof of loss and on grounds not relating to the proofs will ordinarily be considered ■ a waiver of the provisions of the policy requiring the proofs to be presented. 29 Am. Jur. 859, Insurance, Section 1143; 7 Couch Cyc. Insurance Law 5545, Section 1573. This jurisdiction is committed to that doctrine. *Miller* v. *New York Life Insurance Co.*, 84 Utah 539, 37 P. 2d 547.

The provisions of the policy of insurance that deal with the preparation and furnishing of proof of loss provide as follows:

"When the loss occurs, the insured shall:

*   *   *   *   *

"(c) file proof of loss with the company within sixty days after the occurrence of loss, unless such time is extended in writing by the company, in the form of a sworn statement of the insured setting forth the interest of the insured and of all others in the property affected   *   *   *."

Under the terms of this particular policy, failure to comply with this provision does not void the policy. Furnishing a proof of loss is only made a condition ■■ precedent to payment for loss. In this regard the following terms are found in the policy:

"Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

The effect of this provision is to require the insured, prior to requiring payment, to furnish a proof of loss. It does not defeat his rights to sue if such is furnished regardless of whether or not it is submitted within the 60 day period. 29 Am. Jur. 828, Insurance, Section 1105, states the rule as follows:

"*   *   *   There is, however, a conflict of opinion on the question whether the provision in the usual form of policy, that notice and proofs of loss must be made within a certain time, is a condition precedent so far as giving notice or furnishing proofs of loss in the prescribed time is concerned. Some courts hold that the failure to comply with the policy within the period specified defeats a recovery on the policy. The more generally accepted rule, however, is that the requirements of an insurance policy that the insured shall give notice and furnish proofs of loss within a certain time are conditions precedent to the right to sue, but failure to comply with such requirements within the time stipulated does not void the policy or work a forfeiture in the absence of a stipulation in the policy to that effect.

Such failure merely postpones the day of payment, provided notice is given and proofs of loss are furnished within such time as will enable the insured to bring his suit within the time limited by the policy  *  *  *."

This rule is emphasized by the fact that when Yancey first contacted Stewart, which was well within the 60 day period, defendant was not concerned about a proof of loss. According to Yancey, it was not even a matter to be discussed until the other matters were disposed of. Plaintiff testified that Yancey agreed to prepare the proofs of loss, while Yancey's testimony was that the subject was not discussed, as such an act on the part of plaintiff would not be required until after the adjustment was completed. The trial court apparently accepted Yancey's testimony in connection with this evidence and his, Yancey's version is consistent with his statement to Stewart that it was doubtful the company would accept liability because of the transfer of the car. Defendant company likewise appears to have adopted the theory that this act was only a condition precedent as when it finally got around to denying liability, which was after the 60 day period, no mention was made of the failure to furnish proof of loss.

Attempts were made by the plaintiff, either in his individual capacity or as administrator of the estate, to get a decision from the defendant. That he was unsuccessful in this is apparent from the facts that from December 28, 1945, until June 3, 1946, no definite response could be obtained from the company. For approximately six months the company refused to disclose what it intended to do in the way of adjusting the claim and during all this time no mention was made by the company that it was relying on any failure to comply with the stipulated terms of the policy in regards to furnishing proof of loss. The defendant, by its conduct, lulled the parties into a sense of security regarding the necessity of furnishing a proof of loss. A fair inference from Yancey's testimony is that liability would be determined solely on the basis of the transfer of the car. If this

question was determined adversely to plaintiff, a proof of loss would be unimportant. It would be unreasonable and unjust to permit a company to suggest a defense and delay a commitment of liability or non-liability until such time as the insured's rights had been impaired and then permit it to inconsistently change its reason for denial of liability from one ground to another.

Even were we to concede that Yancey's original statement wherein he said it was doubtful that the company would pay was not sufficient to waive the requirements of furnishing a proof of loss, the subsequent acts of defendant were. At some time early in the year 1946, Yancey showed Stewart his written report to the company and told Stewart that the company wanted verification of the facts reported by him before making a final decision. No mention was made of the necessity of the proof of loss, as the company was apparently trying to strengthen its defense on the theory that title to the car had been transferred. In a letter written on June 3, 1946, the company placed its refusal to pay on the same grounds originally given by Yancey. It confirmed and verified the reasons given by him to Stewart in December, 1945. This letter stated, in no uncertain terms, that defendant would not pay because the estate had no insurable interest in the car and Spackman was not recognized by the company as an additional insured. We, therefore, have confirmation of the fact that right from the inception, the furnishing of a proof of loss was considered unimportant by the company and would have been a useless act on the part of the claimants. Had Spackman prepared and submitted one, it would have been of no value because the company was claiming he was not an additional insured. Had the administrator furnished one, it likewise would have been of no value because the company, at first represented it might, and finally did, deny liability for the reason that the title of the car had been transferred. Right from the first investigation, the company questioned its liability solely on

the ground that the heirs had sold the car. This was assigned as the reason for delaying its final decision on the claim. The course of action pursued by the company from the time of Yancey's first visit until the time liability was finally denied, was such as to lead the claimants to believe there was no necessity of tendering a proof of loss.

While stipulations in insurance contracts are ordinarily, if reasonable, valid and binding, where, as here, the conduct of the insurance company is such that it misleads insureds to their prejudice, then it waives strict performance with the requirements. To permit an insurance company to stall, delay and withhold information from interested parties for a period of six months and then permit it to escape liability because the other party failed to appreciate that time was the essence, would permit a company to deliberately mislead and prejudice an insured.

In this case the acts and conduct on the part of the defendant were such that we hold as a matter of law it waived the requirements that plaintiff furnish proof of loss prior to instituting suit.

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

McDONOUGH, C. J., and PRATT, WADE, and WOLFE, JJ., concur.