442 P.2d 933

**Richard L. ANDERSON, Plaintiff and Appellant,**

v.

**BENEFICIAL FIRE AND CASUALTY COMPANY, Defendant and Respondent.**

**No. 11067.**

Supreme Court of Utah.

June 20, 1968.

Robert W. Hughes, Salt Lake City, for appellant.

R. M. Child, of Ray, Quinney & Nebeker, Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a summary judgment dismissing plaintiff's complaint for recovery under an insurance policy, on the ground that plaintiff had not filed his suit within the time required under the terms of the policy. Affirmed with costs to defendant.

From use of the discovery process under the rules, employed by both sides, the facts appear as follows: On August 8, 1965, some of plaintiff's equipment disappeared resulting in a loss to plaintiff. Plaintiff orally notified his insurance salesman thereof. The policy required *written* notice, and the filing of proof of loss *within 60 days.* Neither of the provisions was honored, but proof of loss finally was supplied about six months later. At this juncture the defendant could have denied liability, but for some undisclosed reason it did not. The policy also had an arbitration clause, which was not followed. In addition, it had a provision that "No suit * * shall be sustainable * * * unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss,"—which language was crystal clear. On July 15, 1966, after plaintiff's failure to comply with other terms of the policy,—equally crystal clear,—and over three weeks prior to the 12-month deadline, defendant rejected the claim, based on another provision of the policy that relieved it from obligation if it appeared that the result of the loss was a so-called "inside job." This rejection put plaintiff on notice with ample time for him to invoke the limitations provision anent filing a suit, of which he took no advantage. Up to that point there was no genuine issue of fact. On November 3, 1966, plaintiff filed this suit, three months after the limitations provision in the policy. A defendant's motion for summary judgment was set for hearing on October 10, 1967, and on the day of that hearing, plaintiff walked in with a couple of affidavits,—one by Hanney, as-

serting that he was agent for a local insurance agency which in turn was an agent for defendant insurer. All he said therein was that after defendant's rejection of plaintiff's claim, the latter called him, and that thereafter Hanney simply advised his immediate superior, the local agency, that if the defendant, Beneficial did not pay plaintiff's claim, the latter would sue Beneficial,—suggesting that his employer resubmit the claim,—*that's all*. At this juncture there was no genuine issue of fact to be tried, and there is nothing in the record to reflect that anyone paid a bit of attention to Hanney's report or suggestion. Contrariwise, defendant, Beneficial, reaffirmed its previous rejection in October, 1967. At this point there was still no genuine issue of fact.

The second affidavit, by plaintiff Anderson, presented at the zero hour, besides being self-serving, was quite inconsistent with that walked in by Hanney, who not once in his affidavit said he assured Anderson that anybody said the matter would be considered again. At this intersection, there was no place to go except down the road traveled by those having no genuine issue as to its course, which could end nowhere except in the trial court's cul de sac with its poster of "dismissal."

It is most interesting and significant to note that the plaintiff's only argument and the backbone of this appeal is epitomized by his brief's statement that "The majority rule is the contractual period within which time an action must be brought, commences to run at the time the right to sue accrues, irrespective of the date of loss." For this ipse dixit, counsel cites Appleman, Insurance Law and Practice, Vol. 20A, Sec. 11611, copying verbatim the authorities in the footnote thereto,—16 cases presumably supporting the above gratuity.

What Mr. Appleman *actually* said completely is antithetical thereto. What he *did* say was: "Under particular policy wordings, it has been held that the contractual period of limitations commences to run *at the time of loss* or death. Similarly, the date of an accident resulting in death, and not the date of death, has been held to control." (Emphasis supplied.)

CALLISTER and TUCKETT, JJ., concur.

CROCKETT, Chief Justice (dissenting).

This is a summary judgment which turns the plaintiff out of court without trial and the opportunity of presenting his evidence. This should be done only when under any view of the facts as contended by him he could not establish a right to recover.

It is true that the plaintiff did not commence his action within the one year after the alleged loss. Notwithstanding that fact, it is my opinion that under the affidavits filed by the plaintiff and Mr. Kent Hanney (the agent who sold him the poli-

cy) there is an issue of fact presented which should be tried in order to determine whether the defendant company waived the time limit stated in the policy. It is extremely important that, even though plaintiff knew that Mr. Hanney could not settle the claim, but had to submit it to the defendant company, nevertheless it appears that Hanney had authority to negotiate and plaintiff could reasonably look to and rely upon the representations Hanney made with respect to the negotiations as to settlement.

The affidavit of the plaintiff states:

\*    \*    \*    \*    \*    \*

3. That on or about August 8, 1965, affiant suffered a loss and *immediately advised Mr. Kent Hanney,* and thereafter affiant submitted proof of loss to Beneficial.

4. Affiant inquired of Mr. Hanney, after a reasonable period had elapsed, concerning his claim for the loss of equipment, and *was advised by Mr. Hanney that the company was considering the claim and that Trans-Western had recommended payment of the claim as filed.*

5. Affiant received a letter from Beneficial dated July 15, 1966 rejecting his claim as outlined in his complaint in this action. *Hanney advised that Beneficial was in error* and that such action on the part of Beneficial was extremely unusual in view of Trans-Western's recommendation of payment, and that the matter should be reconsidered. *Mr. Hanney advised affiant that Trans-Western agreed to resubmit the matter to Beneficial.*

6. In the latter part of October, affiant was advised by telephone that Beneficial again rejected his claim.

7. Affiant *relied upon the agent of Beneficial* in failing to commence an action within twelve months from the time the loss occurred, and that *it was not until after a period of twelve months had expired that plaintiff learned that Beneficial had rejected his claim.*

In support of his position and the averments in his own affidavit, plaintiff also filed the affidavit of Kent Hanney which states in part:

\*    \*    \*    \*    \*    \*

4. On or about the 8th day of August, 1965, Anderson suffered a loss of equipment and affiant received verbal notice of said loss from Anderson upon Anderson's discovery, and later assisted Anderson in preparing a proof of loss which was submitted by Trans-Western to Beneficial in February, 1967.

5. Affiant, at the request of Anderson, and upon his own initiative, on occasion inquired of Trans-Western concerning the claim described above, frequently, every other week or so, between

March and July of 1966, and was advised on one or more occasions by Mr. Neil Davis of Trans-Western *that the claim was in order and in fact had been recommended for payment by him to Beneficial.* Affiant passed on to Anderson the replies concerning payment aforesaid.

6. Affiant was advised by telephone by Davis and Anderson that Beneficial had rejected Anderson's claim in the latter part of July, 1966. Anderson related that he had received a letter rejecting his claim.

7. Affiant and Anderson reviewed Beneficial's letter of rejection and affiant went to Trans-Western's office and advised Mr. Davis that unless Beneficial paid Anderson's claim, that Anderson would bring legal action *and requested that Anderson's claim be resubmitted* and so advised Anderson. Affiant was advised in the latter part of October, 1966, that Beneficial had rejected the reconsideration of the Anderson claim.

The right of the insurer to place reasonable time limitations for proof of loss and for the bringing of an action is unquestionable. There are reasons why this may be beneficial to both insured and insurer. It enables them to dispatch the business in an efficient and expeditious manner while any necessary proofs and/or witnesses are available and recollection of events is fresh in their memories. Notwithstanding the right to provide such limitations in insurance policies, their enforcement is not without limitation. By the same token that the law in the interest of justice and public policy imposes limitations upon other contract provisions,[1] it is generally held that the limitation in insurance policies will not be enforced if it is unreasonable under the circumstances so that it results in inequity or injustice.[2] One of the reasons emphasizing the soundness of this rule is that the law by reason of statute allows an action to be brought on a written contract within six years, and this provision of the contract is in derogation of that right.[3]

1. E. g., that contracts involving crime, civil wrongs, frauds or violations of law, or otherwise against public policy are unenforceable see 17 C.J.S. Contracts p. 980 et seq.; 17 Am.Jur.2d 506, et seq.
2. The reasonableness of the stipulation depends, not alone on the words of the contract, but upon the facts of a particular case. See Columbia Security Co. v. Aetna Accident & Liability Co., 108 Wash. 116, 183 P. 137; and Ward v. System Auto Parks & Garages, Inc., 149 Cal.App.Supp.2d 879, 309 P.2d 577. See also 53 C.J.S. Limitations of Actions p. 969 and cf. Capehart v. Heady, 206 Cal. App.2d 386, 23 Cal.Rptr. 851, 6 A.L.R. 3d 1190, dealing with a shortened limitation in a lease, stating: Can be validly contracted, qualified, however, by the requirement that the period fixed is not so unreasonable as to show imposition or undue advantage. [Citing authorities.]
3. That such contracts in derogation of the general statute of limitations are not favored see Lewis v. Hopper, 140 Cal.

There is another doctrine of insurance law which has pertinency here: when a shorter time than the statutory limitation is provided for the bringing of an action on a loss covered by an insurance policy, the period does not begin to run until the cause of action arises. This court so declared many years ago in the case of Hong Sling v. Royal Ins. Co., et al.:[4]

> * * * Ordinarily, where a party has a given time in which to bring an action, *he has the whole of that time in which to bring it,* and we hold that, where a policy of fire insurance provides that no suit shall be brought * * * until after an arbitration shall be had, or other act done, which extends or may extend indefinitely the time in which the suit may be brought, *the true intent of the parties is that the 12-month limitation does not begin to run until the cause of action accrues,* unless it is delayed through the fault of the insured. * *

That this is the general law is affirmed by the eminent authority Appleman on Insurance, Vol. 20A, Sec. 11611, p. 3, wherein he states:

> The most general rule followed by the courts, however, is that the contractual period commences at the time the right to sue accrues, irrespective of the date of loss. [Citing numerous cases.]

It is also to be noted that the subject policy here provided for arbitration, which was never resorted to nor accomplished.

It should be observed that the question whether or not proof of loss was furnished within 60 days is not part of this case. The defendant Beneficial has not raised that question. When it finally rejected the plaintiff's claim on July 15, 1966, nearly a year after the alleged loss, it made no mention of the proof of loss. Its letter of rejection was solely on the ground that the loss was one excluded from coverage by paragraph 9 of the policy which excepted liability for loss which resulted from any "fraudulent or criminal act done by * * * any employee of the insured." In view of the fact that this was the company's defense, whether or not there was a proof of loss filed in time, in no way adversely affected the company. See Stewart v. Commercial Ins. Co., etc.,[5] wherein it was held that in view of the company's defense that the claimants had no insurable interest in an automobile, the furnishing of a proof of loss as required by the policy "would have been a useless act on the part of the claimants," in no way prejudiced the company,

App.2d 365, 295 P.2d 93; Dechter v. National Council Knights and Ladies of Security, 130 Minn. 329, 153 N.W. 742.

**4.** 8 Utah 135, 30 P. 307.

**5.** 114 Utah 278, 198 P.2d 467, 29A Am. Jur.Ins. Sec. 1432 states: "The general

rule is that a denial of liability by an insurer on grounds not relating to proofs of loss will ordinarily operate as a waiver of policy provisions requiring the presentation of such proofs. * * *"

and therefore afforded it no ground for defense against the suit, as explained by Justice Latimer in that case, to which I refer and spare detailed discussion here.

There is law which impresses me as fair and reasonable that where there is dispute over an insurance claim, and there are requirements for proof of loss within 60 days, then after it is filed, 60 days must elapse before a claim is payable, the period of limitation does not begin to run until the company is obliged to pay, that is, until the cause of action arises;[6] and other cases have held that the period does not commence until the company has rejected the claim presented.[7] The delay is often to the advantage of the insurance company and after making use of it, as it has a right to do, it should not be given nor take advantage of invoking a literal application of the 12-month limitation to the disadvantage of the insured. As stated in the case of Hong Sling referred to above, the insured should have the one year after his right to sue arises.

From the undisputed averments of the affidavits quoted above it could well be found that there were negotiations going on between the plaintiff and the defendant company until the plaintiff received the first definite rejection of his claim in the letter of July 15, 1966. It is not at all unusual, nor unreasonable for an insured (plaintiff here) to rely upon the insurance agent (Mr. Hanney) who sold him the policy to handle the business in connection with it. It seems to me that a court or jury may very well find the facts to be such that the plaintiff could reasonably have thought there was a good possibility that the claim would be paid without suit, under which circumstances, according to the law as hereinabove set forth, the company should be precluded from insisting strictly on the one-year statute of limitations. On this point Appleman on Insurance, Vol. 20A, Sec. 11639, p. 37, makes this statement:

> Where the insurer induced a reasonable belief that the claim would be paid without suit, it cannot thereafter assert such limitation.

It is submitted that on the basis of the contentions made by the plaintiff there are issues of fact to be determined and that in accordance with our guarantees of freedom of access to the courts for settlement of disputes he should be afforded the opportunity of a trial. (All emphasis added.)

ELLETT, J., concurs in the dissenting opinion of CROCKETT, C. J.

---

6. See 20A, Appleman Insurance Law & Practice, Sec. 11612, footnote 9, and authorities there cited; see also O'Neal v. American Equitable Assurance Co. of New York, La.App.1964, 162 So.2d 384.

7. Ibid. Appleman, Sec. 11612 above, footnote 10 therein.