483 P.2d 894

**Thomas R. BROADBENT, Plaintiff and Appellant,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant and Respondent.**

**No. 12263.**

Supreme Court of Utah.

April 7, 1971.

the defendant wherein defendant promised to pay up to $50,000 on each liability claim for which plaintiff might be liable arising out of malpractice, error or mistake in rendering or failing to render professional services.

The policy was issued on or about May 4, 1954, and was effective for two years thereafter. It contained the following material provisions:

(2) Upon the Insured becoming aware of any alleged injury covered hereby, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable together with the fullest information obtainable. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(4) No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, * * *.

The critical question in this case is whether plaintiff gave timely notice to the defendant of injury to one of his patients.

The basic facts of the case are not in dispute and are taken mainly from the plaintiff's record of the treatment given

Rex J. Hanson, of Hanson, Baldwin, Brandt & Wadsworth, Salt Lake City, for plaintiff-appellant.

Ray R. Christensen, of Christensen & Jensen, Salt Lake City, for defendant-respondent.

ELLETT, Justice.

The plaintiff appeals from an adverse summary judgment. As a physician and surgeon he had a policy of insurance with

to and the progress made by the patient. This record shows that on or about May 10, 1954, the plaintiff commenced treatment of a patient which consisted of implanting a radioactive substance known as Radon Seeds in a tumor in the cheek of the patient in an attempt to reduce the tumor. The effect of the Radon Seeds would be spent in about 30 days after they were imbedded. However, something went wrong, and the anticipated reaction to the radiation treatment did not materialize. Instead of a reduction, there was swelling, tenderness, redness and increased salivation. The plaintiff treated the patient for more than 12 years, all the time trying to find out why the treatment originally given was not successful.

In early 1957 the plaintiff learned that the patient had received a prior radium treatment, and he feared that the cumulative effect of the two treatments might be the cause of the trouble. He immediately sought and obtained information about the prior treatment and determined that the amount of radiation received at the prior date was too small to be a factor in causing the reaction in the patient. He consulted with other doctors and specialists but never did learn the cause of the failure of his original treatment. He gave the proper amount of Radon Seeds if the size of the tumor was correctly estimated; however, he gave too much if the quantity of liquid in the tumor was greater than calculated.

He knew the patient had a possibility of over-radiation treatment, but neither he nor any of his consultants knew of anything he had done improperly or which would be considered a result of negligence, and so he continued to treat the patient for an additional nine or ten years without having any complaints from her that the treatment given was a result of malpractice.

The patient ultimately lost a part of her jawbone and suffered other disfiguration to her facial features.

On June 9, 1967, the plaintiff received a notice from the patient's attorney that a claim for malpractice was being made against him. The next day he notified the defendant of that claim.

An action against the plaintiff herein was commenced July 28, 1967, and the defendant herein undertook the defense but with a reservation of all rights to deny coverage. The plaintiff effected a settlement with the patient and then began this action to compel the defendant to honor the insurance policy.

There is no claim of defense made by reason of the statute of limitation, and we are here concerned with the simple question of whether the plaintiff gave timely notice to the defendant of the alleged malpractice.

■ It must be understood that the practice of medicine is not an exact science. It is an art, and a doctor is not a guarantor of

results in any case.[1] The plaintiff in this matter made a settlement with his patient and thus ostensibly admitted liability for malpractice. However, that admission was made only after an action was begun against him.

There are many cases involving the giving of notice to an insurer, but most of them relate to notice after the occurrence of a specific event, such as the death of an insured, an injury to one's person, a loss by fire or theft, or a collision between cars.[2]

The instant case is different in that the policy here requires the insured to give notice to the Insurer when he becomes "aware of any alleged injury covered" by the policy.

The word "allege" is defined in the unabridged edition of the New Twentieth Century Dictionary as follows: "To declare; to affirm; to assert; to pronounce with positiveness; * * *" The word was chosen by the insurer, and the ordinary meaning thereof is the one which courts should adopt in interpreting the contract.

There is one case which seems in point with the instant matter. It is Sohm v. United States Fidelity & Guaranty Company, 352 F.2d 65 (1965) and involved a malpractice action. There the doctor performed a hernia operation on a patient. Immediately thereafter the patient had pain in her leg. An exploratory operation was conducted some seven weeks later, and the doctor then learned that he had made an improper suture in a nerve of the patient. He gave no notice to his insurer until a claim for malpractice was made against him more than five months later. The court there said:

> As stated previously, the Court is of the opinion that when the Appellant knew on October 1, 1962, that he caused the injury of which Mrs. Wilson complained, and at that time also knew she had a right to bring a lawsuit, he was aware of an alleged injury covered under his liability policy. This provision does not mean that the Appellant could wait until he was sued.

It frequently happens that anticipated or hoped-for results do not follow treatment in connection with the healing arts. If a doctor had to report every such occasion to his insurer, the insurer would be endlessly annoyed, for in the great majority of cases the patient recovers. That which will benefit one patient may not be helpful to the next one, and so a doctor must of necessity watch the progress of his patient and change the treatment from time to time in

1. 70 C.J.S. Physicians and Surgeons, § 47.

2. Dunn v. Metropolitan Life Insurance Co., 100 Utah 111, 110 P.2d 561 (1941); Amundson v. Mutual Benefit Health and Accident Association, 13 Utah 2d 407, 375 P.2d 463 (1962); Anderson v. Beneficial Fire and Casualty Company, 21 Utah 2d 173, 442 P.2d 933 (1968).

# 434

an effort to obtain favorable results. If he had to report to his insurer every adverse reaction of his patients, he would scarcely have time to practice his profession, and the constant efforts of the insurer to make a defense would greatly hamper the doctor in his attempt to heal the patient.

We hold that a doctor should notify his insurer of a claim of malpractice when it is alleged to have been committed or when it is or should be obvious to him that he has caused harm to his patient through neglect of duty or ignorance of the standards of practice amongst his fellow doctors and that a claim is likely to be made against him.[3]

Whether this plaintiff knew or should have known that the condition of his patient was due to his own lack of due care in treating her at any time prior to June 9, 1967, would be a question of fact for a jury to determine. We do not think the court can say as a matter of law that notice of an alleged injury should have been given prior to that date.

The judgment of the trial court is reversed with directions to proceed with the matter according to law. Costs are awarded to the appellant.

CALLISTER, C. J., and TUCKETT, HENRIOD, and CROCKETT, JJ., concur.

---

3. Falk v. Sul America, etc., 465 P.2d 714 (Or.1970); Bergh v. Canadian Universal Ins. Co., 197 So.2d 847 (Fla.App.1967).