SMITHPETERS v. PRUDENTIAL INS. CO. OF AMERICA.—
81 S. W. (2d) 392.

Eastern Section.   December 22, 1934.

Petition for Certiorari denied by Supreme Court, March 19, 1935.

Thos. P. Gore and George N. Barnes, both of Johnson City, for plaintiff in error.

Williams, Miller & Winston, of Johnson City, for defendant in error.

McAMIS, J. Plaintiff in error, Sam Smithpeters, has appealed to this court from a verdict and judgment in the law court at Johnson City, dismissing his suit against defendant in error, Prudential Insurance Company, for disability benefits alleged to be owing him under a group policy and certificate. The policy and certificate provide for benefits in case the certificate holder becomes totally and permanently disabled while employed by Miller Bros., and while the policy is in force and effect.

The first assignment is that the court erred in refusing a new trial because there is no evidence to support the verdict.

Plaintiff in error entered the employ of the group policyholder, Miller Bros., in 1928, and worked there until April, 1932, when he claims to have become totally and permanently disabled by reason of a heart ailment, high blood pressure, and kidney trouble. No premiums were paid after April 30, 1932.

While the medical evidence is in agreement that, at the time the case was tried on November 3, 1933, plaintiff in error was totally

and permanently disabled, and while the testimony of lay witnesses, including plaintiff in error, strongly corroborates the medical testimony in such way as to leave no doubt in our minds that he was both totally and permanently disabled at that time, there is some evidence in the record from which the jury could have reached the conclusion that that condition antedated the issuance of the certificate on June 5, 1929.

It is the contention of defendant in error that plaintiff in error's disability did, in fact, occur before the issuance of the certificate, and, therefore, is not covered by the policy and certificate.

There is convincing proof in the record that plaintiff in error was not in good health at the time of the issuance of the policy. He admits that he was having "fainty spells" and was really not able to work when he went to work for Miller Bros.; yet the fact remains that he did work there for about four years. It is not a question of when he became diseased or when he became partially disabled. The vital question is, When did he become totally and permanently disabled by reason of disease?

This was a question for the jury to determine, and there is evidence to support either the view that he became totally and permanently disabled before the policy was issued, or that this condition did not occur until after the policy was issued but before April 30, 1932.

Obviously, if plaintiff in error became totally and permanently disabled before the policy was issued, he could not recover because he is indemnified only against total and permanent disability occurring while the policy is in effect. The certificate so provides, and this is a reasonable and binding provision of the contract. Dees v. National Casualty Co., 17 Tenn. App., 183, 66 S. W. (2d) 603; Williams v. Insurance Co., 163 Tenn., 262, 43 S. W. (2d), 215.

Counsel for plaintiff in error insist that the company is precluded from raising the contention that plaintiff in error became totally and permanently disabled prior to the issuance of the certificate by reason of the incontestable clause in the policy. The ineptitude of this contention is apparent when it is remembered that the company is not seeking to rescind the policy or defeat a recovery under it by reason of any fraud, misrepresentation, or warranty upon the part of insured at the time the certificate was issued. Its insistence is that the policy does not cover any disability except such as occurs while the policy is in force and while insured is employed by the group policyholder. This, as we have seen, it may lawfully do, by way of limiting the risk assumed.

There was some material evidence from which the jury could have reached the conclusion that insured became totally and permanently disabled before the certificate was issued, and the first assignment must, therefore, be overruled.

What has just been said is responsive to assignment No. 2, and it is, likewise, overruled.

█ Assignment of error No. 3 levels a two-fold criticism at a portion of the court's charge: (a) That he committed error in charging the jury that the disability alleged must have originated after the policy was issued and while it was in force and effect; and (b) that the court's definition of total and permanent disability was too restricted to give the jury a proper guide under the law as declared by the Supreme Court in the case of Pacific Mutual Life Insurance Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052.

The first of these criticisms has already been disposed of, in principle, in disposing of assignment No. 1.

The second criticism is not well made and must be overruled for the reason that the learned circuit judge, in another portion of the charge, defined total disability as follows:

"And, gentlemen of the jury, I instruct you that wholly disabled does not mean a state of absolute helplessness, but it does mean that it puts one, or when one becomes in a condition where they are unable to do the material acts necessary to the prosecution of their occupation, or do any work that would bring to them any kind of compensation of financial value, and that that condition will exist the remainder of their lives. If it is shown that a person is unable to do the material acts necessary to the prosecution of any occupation or employment for wage or profit, or do any work bringing financial remuneration to them of any kind, and that that condition will exist for the remainder of their lives, that would be held to be total and permanent disability under the terms of the contract, and it must appear that they are rendered unable to do these things in the usual and customary manner, and to perform substantially and materially all the acts necessary to the prosecution of such work or enterprise."

The charge, taken as a whole, defines total and permanent disability substantially in accord with the law in this state, and we cannot see that it was prejudicial, in the respect complained of under assignment No. 3.

Assignment No. 4 is without merit, and is overruled.

Under assignment No. 5, plaintiff in error complains of the following charge of the court:

"If it appears from the proof, and you so find, or if the proof is evenly balanced on that, that he was able to and did work after this policy was cancelled, during July and August and carried on and did his work in the usual and customary way, and that he received financial remuneration for his services for working and during July and August, and if in this year he was able and did work 99 hours in May on the road of this county and a substantial number of days in April and that he worked 80 hours in the month

of July and 80 hours in the month of August and he received financial remuneration for his work in that time, he could not recover and it would be your duty to return a verdict in favor of defendant.''

■■ Although, undoubtedly, the fact that insured worked after he claims to have become totally and permanently disabled raises a presumption of his ability to do so, and is a circumstance to be considered by the jury, we think plaintiff in error was entitled to have his theory that he worked because of economic necessity at the risk of serious consequences, included in the charge to the jury. Certainly it was error to charge and emphasize defendant in error's theory by reciting with particularity insured's activities and earnings after he claims to have become disabled, without any mention of his reasons for so doing and without mentioning his contention, supported by substantial testimony, that it was dangerous for him to do so because of his condition of health.

True, the learned circuit judge told the jury they would have to find that insured was able to do the things he did after he claims to have become disabled, yet he omitted to charge that, although insured may have been physically able to execute the material acts required, whether he did so at the risk of further impairment of health or risk of his life was for them to determine from the evidence. Without expressing any opinion as to where the preponderance of the evidence lies, there is material evidence showing that plaintiff in error was not in physical condition in April, 1932, and, thereafter, to do manual labor, although it is shown that he did some work after that time.

The evidence shows that his foreman on the roadwork, referred to and somewhat emphasized in the court's charge, tried to get plaintiff in error on the federal relief roll because he did not think he was able to work. For the same reason he gave plaintiff in error light work to do on the road, and plaintiff in error's work, according to his testimony, consisted mainly of ''carrying water and picking up little stuff around.''

Dr. Sells testified that plaintiff in error had a blood pressure of 200 over 100 when it should have been 140 over 80 at his age; and that he was suffering from cardiovascular renal trouble and kidney trouble.

As to the duration of this condition and its effect upon plaintiff in error's ability to work, Dr. Sells testified (on November 3, 1933) as follows:

''What would you say, judging by the condition he now is in, as to how far back would be the origin of it?

''I can't specify, the man has been disabled for several years, two and one-half years, anyway.

''Q. 20. I will ask you first if he is able to do manual labor?

"By all means he can't do labor now, his heart is so diseased he is liable to die suddenly.

"Q. 21. Judging from the condition he is now in, and basing that upon your opinion, has he been for some time able to do that?

"I don't think so, as I say, that he has been able to work for the last 2 or 3 years, 2½ anyway.

"Q. 23. Now if it should appear he attempted do some light work on the road this summer, actually using a pick and shovel sometimes, do you think he did that at the risk of the impairment of his health? And took that risk?

"Yes, sir, because he has a heart burdened now with all it can carry, anything that causes muscular effort increases the labor on the heart."

. There is no medical evidence suggesting a contrary view.

█ It has never been held, so far as we are advised, that even though insured still has sufficient physical strength to do his customary labor though at the risk of further impairment of health and perhaps, loss of life, and, under such circumstances because of the compulsion of economic necessity he does a limited amount of work for which he receives a small remuneration, that he forfeits his right to recover.

This question should be left to the jury under a proper explanatory charge from the court.

In the case of U. S. v. Martin (C. C. A.), 54 Fed. (2d), 554, 555, the court cited Taylor v. Southern State Life Ins. Co., 106 S. C., 356, 91 S. E., 326, L. R. A., 1917C, 910, Young v. Travelers' Ins. Co., 80 Me., 244, 13 Atl., 896, U. S. Casualty Co. v. Perryman, 203 Ala., 212, 82 So., 462, Metropolitan Casualty Ins. Co. v. Cato, 113 Miss., 283, 74 So., 114, Fidelity & Casualty Co. v. Bynum, 221 Ky., 450, 298 S. W., 1080, and Hefner v. Fidelity & Casualty Co. (Tex. Civ. App.), 160 S. W., 330, and said, in part:

"These decisions all give to the terms the practical common-sense meaning that one is totally disabled when he is not, without injury to his health, able to make his living by working. They reject the idea that it is necessary to prove absolute inability to do any kind of work; they establish that proof that the insured has been able to do some work while evidence on the point is not of itself disproof of disability."

The court further said:

"There are cases which rightly hold that notwithstanding one has worked continuously for long periods of time he might yet be found to be totally disabled if he has done the work upon sheer resolution, and at the risk or certainty of impairing his health or shortening his life."

See, also, 7 Couch on Insurance, sections 1670, 1673, and 1674.

We are therefore of opinion that the charge complained of was erroneous and prejudicial.

But it is urged by counsel for defendant in error that plaintiff in error was not entitled to succeed because he did not give notice of his claim for an unreasonable length of time after he claims to have become disabled, and that, therefore, to reverse and remand the case would avail him nothing. If true, this would be sufficient ground for affirming the case, notwithstanding the error complained of, but we do not think defendant in error is in position to rely upon this ground of defense.

When notified of the claim it refused to entertain it and denied liability upon the ground not that notice was not given within a reasonable time, but that it was not given while the policy was in force. In Smithart v. John Hancock Mut. Life Ins. Co., 167 Tenn., 513, 71 S. W. (2d), 1059, it has since been held that it is not necessary to notify the company while the policy is still in force.

Defendant in error cannot shift its position after suit has been filed and after court costs and other expenses have been incurred, and defend upon the ground that notice was not given within a reasonable length of time. Snyder v. Supreme Ruler of the Fraternal Mystic Circle, 122 Tenn., 248, page 265, 122 S. W., 981, 45 L. R. A. (N. S.), 209; Hartford Acc. & Indem. Co. v. Hay, 159 Tenn., 202, 211, 17 S. W. (2d), 904; Mecklenburg Real Estate Co. v. Kyoleum Co., 142 Tenn., 295, page 296, 218 S. W., 821, 14 A. L. R., 944. See, also, Nash, etc., Co. v. Nat. Liberty Ins. Co., 10 Tenn. App., 4.

These holdings rest upon principles of estoppel which we think are applicable here.

Reverse and remand for a new trial, taxing costs of appeal to defendant in error. Costs below will abide final determination of the case.

Portrum and Ailor, JJ., concur.