HUFFMAN *v.* EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(*Knoxville,* September Term, 1950.)

Opinion filed June 16, 1951.

R. PAUL TAYLOR, of Copperhill, and GOINS & GAMMON, of Chattanooga, for plaintiff in error.

WILLIAMS & FRIERSON, of Chattanooga, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Frank Huffman, a former employee of the Tennessee Copper Company, brought suit in the circuit court against the Equitable Life Assurance Society upon a "group" policy of insurance issued to his said employer, the policy so issued being for the benefit of *all* employees.

The declaration alleged that the plaintiff had been in the employ of the Copper Company for several years "down to and including September 28th, 1945" and had become totally and permanently disabled by the diseases

of bronchitis and silicosis "and will, thereby presumably, be continously prevented for life from engaging in any occupation or performing any work for compensation of financial value according to the opinion of himself and the thoroughly competent physicians who have diagnosed his case." The concluding paragraph of the declaration charges "that the defendant insurance company has wilfully, deliberately and without just cause or excuse, failed to pay him" and such refusal is not in "good faith" etc.

The plea of the defendant is (1) that it does not owe the plaintiff as alleged. (2) The proofs submitted do not establish that plaintiff was totally and permanently disabled while his insurance policy was in force. (3) The plaintiff was not totally and permanently disabled. (4) The defendant was not guilty of bad faith in its refusal to pay the plaintiff.

The certificate of insurance, upon which the plaintiff's suit is based, reads as follows: "In the event that any employee while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such Employee under the policy, pay equal monthly Disability-instalments, the number and amount of which shall be determined by the Table of Instalments below; the number of instalments being that corresponding to the nearest amount of insurance shown in the table, while the amount of each instalment shall be adjusted in the proportion that the amount of insurance

of such Employee's life bears to the amount used in the table in fixing the number of instalments. The amount of insurance herein referred to shall be that in force upon the date on which said Total and Permanent Disability commenced.''

There was a trial in the circuit court upon the issues joined, resulting in a verdict for the plaintiff for $1,000 plus twenty-five (25%) per cent as a penalty. The defendant appealed to the Court of Appeals and that court affirmed the trial court, except as to the amount of the penalty, which was disallowed.

In granting certiorari a per curiam memo was filed, counsel being requested to discuss the single question, ''upon what theory, legal or factual, can one be adjudged as being totally and permanently disabled when he has permanent employment at $50.00 per week.'' Oral argument was heard upon this issue, as well as other assignments of error in the petition for certiorari.

The plaintiff was employed in the mines of the Tennessee Copper Company for six (6) years. His wages ranged from $60 to $85 per week. During the last nine (9) weeks of his employment his average weekly wage was approximately $46 per week. He quit his job in September, 1945, claiming that he was unable to do any work involving physical exercise. Dr. H. P. Hyde, a witness for the plaintiff, testified ''that he was not able to do any manual labor; couldn't stand hard work; couldn't stand the exposure.'' The witness examined him in 1944 and advised him ''to quit the job, he had high blood pressure and also night sweats''; advised him ''to get out in the fresh air and sunshine''; and x-ray revealed he had silicosis and bronchitis. This witness further testified that in his opinion the plaintiff was ''totally and

permanently disabled from following any gainful occupation in order to earn a livelihood.'' (Tr. p. 41). Dr. Burdine, another witness for the plaintiff, testified that from his personal examination of the plaintiff, and from reading x-ray pictures that he had ''silicosis, about the first degree''; that ''silicosis is incurable''; and ''that in his opinion he was totally and permanently disabled.''

The medical testimony offered by the defendant was that the plaintiff was not suffering from any occupational disease such as silicosis and in their opinion he was not totally and permanently disabled. X-ray pictures were. offered in evidence and medical experts, interpreting these pictures, testified that they showed no signs of a disease such as would render him totally and permanently disabled. Dr. Strauss testified that he was not totally and permanently disabled; that he had known many men that had first degree silicosis who had worked for a number of years. Dr. Carl A. Hartung, a specialist in heart and lungs, testified that the ''plaintiff was highly nervous and that aside from a small amount of bronchitis, I could not find any other ailment.'' He took an x-ray picture in 1946 and the only thing discernible in it was some ''bronchial markings'' but there is ''no evidence of any lung disease.'' Dr. Abercrombie testified that he specialized in x-ray examinations, reading and interpreting x-ray pictures. He was asked ''if, in any of these pictures he saw anything that would indicate silicosis or other lung ailment of any serious nature''. A. ''No, sir.'' It was his opinion that the plaintiff was not disabled, but was able to perform manual labor ''in a factory, foundry or other mill work.'' (Tr. p. 127).

It thus appears from the foregoing that the medical experts are in hopeless disagreement in their diagnosis

of the plaintiff's condition. These medical men, who testify for the plaintiff, do not attempt to reconcile their opinions that he is "totally and permanently disabled" with the undisputed fact that he has had regular employment since leaving the Tennessee Copper Company. He held several positions that paid $25 per week and at the time of the trial he was earning $50 per week. The plaintiff has worked for his present employer, Mr. W. C. Rose, for three years, six days a week, starting at $25 per week and was raised from time to time until he earns at present $50 per week. In his present position he sells automobiles, issues auto parts from the stockroom and is paid a salary.

We gather from the testimony of his employer that Mr. Huffman is a valuable man, reliable and satisfactory in every way. He works every day, including Saturday.

"Q. Is he qualified to do the work you hired him to do? A. I wouldn't have him if he wasn't.

"Q. You are not keeping him for charity? A. No, sir.

"Q. As far as you know you intend to keep him, don't you? A. If I stay in business I will."

Mr. Rose further testified that the plaintiff was permitted to rest when he wanted to; that at times he "complains about being short of wind and smothering and I have sent him home several times." (Tr. p. 4). He didn't lay off from work any more than the average employee.

██ In considering whether or not he is "totally and permanently" disabled *presumably for life,* we are not unmindful that in several of our cases it is held that the insured does not have to show that he is in a state of helplessness to bring himself within the terms of the insurance policy. *Metropolitan Life Ins. Co. v. Noe,* 161 Tenn. 335, 31 S. W. (2d) 689; *Pacific Mut. Life Ins. Co. v.*

*McCrary,* 161 Tenn. 389, 32 S. W. (2d) 1052; and *Principi* v. *Columbian Mut. Life Ins. Co.,* 169 Tenn. 276, 84 S. W. (2d) 587.

The term, ''inability to earn'', has been considered in these cases, particulary the McCrary case and the Principi case. But the decisions are not controlling in the case at bar. In the former case, [161 Tenn. 389, 32 S. W. (2d) 1053.] Dr. McCrary was, besides his medical profession, ''a farmer and cattle dealer''. It was conceded that he was totally disabled from pursuing his profession. He merely gave advice to employees and tenants as to farm operations. In considering his ability to earn it was said ''Really, all his gains are returns from invested capital rather than earned income.'' The phrase ''total disability'' was held to mean not a state of helplessness but ''an inability to do the material acts necessary to the prosecution of insured's business or occupation (and substantially all the material acts) in (substantially) his usual or customary manner.'' Since he could not pursue his profession, and could only advise his tenants about farming operations, it was reasonable to conclude that he was unable to do anything ''in his usual or customary manner.''

In the Principi case the insured's right leg had been crushed necessitating two operations, after which he was unable to work, his physicians testifying ''that he was permanently disabled . . . to use his leg, and his right arm had been permanently impaired 50 per cent.'' The Court held that ''Total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case. It must depend largely upon the occupation and employment and the capabilities of

the person injured." Two rules are announced as a condition of recovery as follows:

"First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen or previously formed occupation, but in any other to which he may be reasonably fitted.

"Second, to defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No scintilla rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure."

In *Metropolitan Life Ins. Co.* v. *Noe*, [161 Tenn. 335, 31 S. W. (2d) 690.] supra, the insured had "pellagra" and there was material evidence showing an "absence of hope for her recovery, in view of her failure to respond to medical treatment." In defining "total and permanent disability" it was held, that it "contemplates a physical condition at the time of the claim which reasonably convinces the judging authorities that (a) *The subject is then totally disabled*, and (b) *will so remain for life.*" (Emphasis supplied).

In both the McCrary and Principi cases the same general rule was followed; that is, that the insured is, by reason of injury or sickness, prevented from engaging in any occupation, or from performing any work for which he or she is fitted for compensation of financial value. The primary object of such contracts of insurance is to provide an indemnity while the insured is not able to earn a livelihood, either at his chosen profession or occupation, or at some avocation for which he may be fitted. The mere fact that an insured claims that he is unable

to perform manual labor does not bring him within the terms of the policy if he is able to earn a livelihood at a less tiresome occupation for which he is fitted. Thus the pertinent paragraph of the policy here involved, and copied in this opinion, indemnifies the plaintiff when he is "continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value."

We fail to see how reasonable minds could reach the conclusion from the undisputed facts of the instant case that the plaintiff was, at the time the claim was made, totally and permanently disabled from engaging in *any occupation* or performing *any work* for compensation when he was earning approximately the same wage he earned when he ceased work at the Tenneessee Copper Company.

This is not a case where the insured works "because of the compulsion of economic necessity" and is "running the risk of further impairment of his health or perhaps loss of life" as held in *Smithpeters* v. *Prudential Ins. Co. of Am.,* 18 Tenn. App. 628, 81 S. W. (2d) 392. On the contrary it appears without dispute that he is qualified and fitted for the work in which he is presently engaged without any possible impairment of his health. While the salary Mr. Huffman is now being paid is not large no contention is made that it is not substantially what he earned when he terminated his employment with the Tennessee Copper Company. The opinion of medical experts that the plaintiff is "totally and permanently disabled" does not make an issue in the light of the admitted fact that he has worked regularly for three years, and, at the time he made his claim against the insurance company, was gainfully employed at a job for

which he is fitted, and can continue to hold it as long as his present employer is in business.

It may be true from a medical point of view that Mr. Huffman is suffering from some limited physical disability. But the evidence falls far short of proving that he is totally and permanently disabled within the meaning of the insurance policy. The Court of Appeals is reversed, and the case dismissed.

All concur.