**Robert CORRINGTON, Plaintiff,**

**v.**

**The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, and UNUM Provident Corporation, Defendants.**

**No. 01–2446 M1/A.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 20, 2003.

Wilson Carlisle von Kessler, II, McLeary, Domico & Kyle, PLLC, Gary K. Smith, Esq., Karen M. Campbell, Gary K. Smith & Associates, PLLC., Memphis, TN, for plaintiff.

Luis C. Bustamante, Esq., Stephanie K. Hunt, Esq., Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for defendants.

Jimmy Moore, Memphis, TN, pro se.

Robert DiTrolio, Memphis, TN, pro se.

Tu M. Pham, U.S. Magistrate Judge, Memphis, TN, pro se.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCCALLA, District Judge.

Before the Court is the first of four pending motions for summary judgment that have been filed by Defendants. In this motion, filed August 1, 2002 and titled Defendants' Motion for Summary Judgment, Defendants request judgment in

their favor on the grounds that Plaintiff Corrington's illness first manifested itself prior to the effective date of the insurance policy and is, therefore, not covered by the terms of the policy. Plaintiff responded in opposition on September 3, 2002. Defendants filed a reply brief on September 16, 2002. For the following reasons, the Court GRANTS Defendants' motion for summary judgment.

## I. BACKGROUND

The facts of the case that are relevant to this motion are largely undisputed. Plaintiff Corrington is an attorney. On March 15, 1989, Plaintiff purchased a Disability Income Policy, policy number 89–707–245 (the "Policy"), from Defendant Equitable Life Assurance Society of the United States. The Policy was intended to provide benefits to Plaintiff up to the amount of $2,500 per month in the event that he became totally or residually disabled and unable to work.

In his application for the Policy, Plaintiff denied ever having been treated for or having any known indication of an emotional, psychological, or mental disease or disorder. He also denied having been hospitalized within the previous five years. In reality, Plaintiff had been diagnosed as a manic depressive and had suffered from bipolar disorder as early as 1976, more than ten years before he applied for the Policy. He had also been hospitalized with the Veteran's Administration once in 1983 and twice in 1986 as a result of his mental illness. Plaintiff maintains that the incorrect statements on his application with regard to his illness were unintentional be-

cause he was noncompliant and did not accept his condition.

In June of 1994, Plaintiff submitted a claim for disability benefits due to his mental illness. At that time, Plaintiff claimed he was residually disabled within the meaning of the Policy. Defendants [1] accepted the residual disability claim and began paying benefits to Plaintiff. In 1997, Plaintiff requested that the status of his claim be changed from residual disability to total disability. Defendants subsequently converted Plaintiff's claim into a total disability claim and paid benefits to Plaintiff of $2,500 per month pursuant to the terms of the Policy.

Subsequently on May 10, 2000, Defendants denied Plaintiff's claim for total disability benefits on the grounds that he was no longer totally disabled and unable to practice law. Defendants based this determination on, among other things, a conversation with Plaintiff's treating physician and a finding that after he applied for total disability benefits he had filed fifteen lawsuits in Shelby County, Tennessee.

Plaintiff filed suit against Defendants in Tennessee state court on April 24, 2001. Plaintiff denied that he was practicing law at the time Defendants denied his claim for benefits. Plaintiff asserted that he was, indeed, totally disabled and sought to recover his benefits under the Policy. Plaintiff asserted a number of causes of action in his amended complaint, including breach of contract, violation of the Tennessee bad faith statute, Tennessee Code Annotated § 56–7–105, violation of the Tennessee Consumer Protection Act, Ten-

---

[1]. The Court understands that there is some disagreement as to the nature of Defendant UNUM Provident's role in this case. The resolution of UNUM Provident's role is not necessary for the purposes of this order. Given that the Court must construe the facts and draw all inferences in the light most favorable to Plaintiff, the Court assumes that Plaintiff's view of UNUM Provident's role is the correct one. Accordingly, the Court will make reference throughout this order to the actions of "Defendants", meaning both Equitable and UNUM Provident.

nessee Code Annotated § 47–18–102, intentional and/or negligent infliction of emotional distress, fraud, and civil conspiracy. Defendants removed the case to this Court on June 7, 2001 based on diversity of citizenship.

On May 13, 2002, Defendants sought leave of the Court to amend their answer to the amended complaint to clarify a defense based on the terms of the Policy. On February 11, 2003, this Court granted them leave to amend their answer to specifically enumerate a defense that Plaintiff's sickness is not covered by the terms of the Policy because it was first diagnosed and treated prior to the issuance of the Policy. In the motion presently before the Court, Defendants now seek summary judgment in their favor based on this defense because Plaintiff's sickness is not covered by the terms of the Policy. Defendants specifically do not seek to challenge the validity of the Policy in this motion, nor do they seek a finding as to whether Plaintiff was totally disabled at the time they denied coverage under the Policy.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

Defendants argue that Plaintiff's claim in this case is barred by a term of the Policy that provides coverage only for a disability that is first diagnosed or treated while the policy is in force.[2] Plaintiff had been diagnosed with bipolar disorder as many as ten years prior to the effective date of the Policy and had been hospitalized for this condition three times prior to the effective date of the Policy. Therefore, Defendants maintain, the Policy does not provide coverage for this disability. Defendants rely heavily on the cases of

**2.** This is referred to throughout Defendants' papers as the "first manifest defense". This terminology appears to have originated from the language of the insurance policy at issue in *Hellman*, discussed infra. Given the language of the Policy in this case, the defense would be referred to more appropriately as the "first diagnosed or treated defense". For

the sake of simplicity and because the Court sees no meaningful distinction between the two phrases in this case; the Court will refer to it as the first manifest defense. *See Christopher v. Consolidation Coal Co.*, 222 Tenn. 727, 440 S.W.2d 281 (1969) (finding that a disease is first manifest when it is capable of being diagnosed by a physician).

*Hellman v. Union Cent. Life Ins. Co.,* 175 F.Supp.2d 1044 (M.D.Tenn.2001), and *Krakowiak v. The Paul Revere Life Ins. Co.,* 1996 WL 303661, 1996 Tenn.App. Lexis 346 (Tenn. Ct.App. June 7, 1996), in support of their position.

In response, Plaintiff asserts that the incontestability clause in the Policy prevents Defendants from denying coverage because, at the time Plaintiff applied for benefits, more than two years had passed since Equitable issued the Policy to him. In the alternative, Plaintiff argues that Defendants waived their right to assert the first manifest defense by paying benefits to Plaintiff for six years during which time they were aware of Plaintiff's prior hospitalizations.

## A. Scope of Coverage

■ Under Tennessee law, the interpretation of an insurance contract is a matter of law to be determined by the Court. *Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.,* 136 F.Supp.2d 901, 905 (W.D.Tenn.2001). Courts construe insurance policies in the same manner as any other contract. *Alcazar v. Hayes,* 982 S.W.2d 845, 848 (Tenn.1998).

Plaintiff's Policy contains several provisions relevant to this dispute. Under the terms of the Policy, Equitable is required to make payments in the following circumstance:

TOTAL DISABILITY INCOME. If disability: (1) starts while this policy is in force; and (2) continues beyond the Elimination Period; we will pay the Monthly Income for each month of the period of disability that extends beyond the Elimination Period.

The Policy further provides in the "Definitions" section:

TOTAL DISABILITY means your inability due to injury or sickness to engage in the substantial and material duties of your regular occupation.

SICKNESS means your sickness or disease which is **first diagnosed or treated while this policy is in force.**

(Emphasis added.)

The Policy also contains a "Pre–Existing Conditions Exclusion", which provides in pertinent part:

**This policy does not cover any loss which is caused or contributed to by a pre-existing condition. This is subject to the second paragraph of Incontestability on page 8.** A pre-existing condition is an injury that occurred or a sickness that was diagnosed or treated within the two years before the effective date of this policy.

(Emphasis added.)

Finally, the Policy also contains an "Incontestability" clause that provides:

After this policy has been in force during your lifetime for two years from its Effective Date we cannot contest it for misstatements in the application. We cannot contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during your lifetime. The two years will not include any period during which you are totally, partially, or residually disabled.

**No claim for loss incurred or disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition existed prior to the Effective Date.** This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of loss.

(Emphasis added.)

Given the provisions of the Policy, it appears that Defendants are correct regarding the law to be applied in this case and the interpretation of the Policy. De-

fendants have cited two cases supporting the argument that Plaintiff's previously diagnosed and treated bipolar disorder is not covered by the Policy. The Court finds no reason to distinguish those cases from the case *sub judice*. Plaintiff has not cited, nor has the Court located, any cases to the contrary.

In *Hellman*, cited by Defendants, the District Court for the Middle District of Tennessee, considered a disability insurance policy with nearly identical language to the Policy in this case and a substantially similar set of facts. 175 F.Supp.2d at 1050–1053. The plaintiff in *Hellman* suffered from polysubstance dependence (i.e. drug dependency), which had begun as early as the 1960's. *Id.* at 1045. He subsequently applied for and was issued a disability policy in 1983. *Id.* at 1046. He applied for and received benefits due to his disability in 1994. *Id.* The insurer paid benefits until 1997, at which time it determined that the plaintiff was no longer disabled under the terms of the policy. *Id.* The plaintiff subsequently sued the insurer to recover benefits. On the insurer's motion for summary judgment, it argued that the plaintiff's disability first manifested itself before the policy was in force. Therefore, the insurer argued, the policy did not cover the plaintiff.

The policy in *Hellman* defined sickness as "any illness or disease first manifested while this policy is in force." *Id.* at 1050. The court defined "first manifestation" as the moment when the disease is "first capable of diagnosis by a doctor." *Id.* The policy also contained an incontestability clause with a two year limitation and a

pre-existing conditions limitation that are similar to the provisions in this case. Given the language of the incontestability clause, the plaintiff argued that because more than two years had passed since the issuance of the policy, the insurer could not deny coverage even though the disability had manifested itself before the policy was issued. In essence, the plaintiff asked the court to use the incontestability clause to expand the coverage of the policy.

The *Hellman* court examined Tennessee law, including the *Krakowiak* decision also cited by Defendants, and concluded that under Tennessee law an incontestability clause "goes only to the validity of the policy, without affecting its scope." *Hellman*, 175 F.Supp.2d at 1052. *See also Krakowiak*, 1996 WL at *5, 1996 Tenn. App. Lexis at *13 ("Tennessee has adopted the majority rule that an incontestability clause limits only the insurer's ability to contest the validity of a policy which would otherwise be voidable because of the insured's fraud; the clause does not expand coverage beyond the terms of the policy.").[3] The court found that recovery of benefits for a disability under the policy was limited by the definition of "sickness", which restricted coverage to "any illness or disease first manifested while this policy is in effect." *Id.* at 1053. Since the plaintiff's disease had first manifested itself prior to the issuance of the policy, the court found that it was not covered by the policy. Accordingly, the court granted summary judgment to the insurer.

The arguments that were presented to the Middle District of Tennessee in *Hell-*

---

3. Indeed, although Plaintiff has argued that "there has been no guidance from the Tennessee Supreme Court on the issue of what takes precedence: manifestation of illness prior to issuance of policy or incontestability clause", the Tennessee courts long ago made clear that when a policy contains an incontestability clause the insurer may still contest a claim

based on the terms of coverage. *Smith v. Equitable Life Assurance Soc.*, 169 Tenn. 477, 89 S.W.2d 165, 167–168 (1936); *Smithpeters v. Prudential Ins. Co.*, 18 Tenn.App. 628, 81 S.W.2d 392, 394 (1934) (finding that incontestability clause did not prevent insurer from denying coverage on the basis that disability occurred before the policy was in force).

*man* are precisely the same arguments presented in the case before this Court. The Court agrees with the analysis in the *Hellman* decision. The only potentially meaningful distinction advanced by Plaintiff in this case arises from the definition of "pre-existing condition" in his Policy.[4] As in *Hellman*, pre-existing conditions are generally excluded from coverage under the Policy. However, unlike the policy language in *Hellman*, the definition of pre-existing condition in Plaintiff's Policy includes the following language: "This is subject to the second paragraph of Incontestability." The second paragraph of Incontestability provides, "No claim for loss incurred or disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition *existed* prior to the Effective Date." (Emphasis added.)

In the Court's opinion, this language does not prevent the insurer from denying coverage based on a sickness that was *diagnosed and treated* prior to the issuance of the Policy. The second paragraph of incontestability merely emphasizes the distinction, discussed at length in *Krakowiak*, between a condition that *exists* prior to the issuance of a policy and a condition that is *manifest* (or, as in this case, "diagnosed or treated") prior to the issuance of a policy. *Krakowiak*, 1996 WL at *6–7, 1996 Tenn.App. Lexis at *18–19 ("The statutorily mandated incontestable clause only prohibits denials of claims based upon the prior existence of a disease, rather than the manifestation of a disease prior to the issuance of the policy"). Therefore, the difference in policy language does not affect the scope of coverage in this case.

Plaintiff concedes he was previously diagnosed as a manic depressive who suffered from bipolar disorder as early as 1976. (Mem. of Law in Supp. of Pla.'s Opp. to Def.'s Mot for Summ. J. Regarding First Manifest Defense ¶ 15.) This is the same illness for which he now claims disability benefits. The Policy does not cover sickness that was diagnosed or treated prior to the issuance of the Policy. Therefore, this is an appropriate reason for Defendants to deny coverage under the Policy, even though this was not the original reason for the denial of coverage. It also supports a finding of summary judgment in favor of Defendants.

**B. Waiver**

█ Notwithstanding the above analysis, the Court must still determine whether Defendants have waived (or should be estopped from asserting) the first manifest defense. Plaintiff argues that Defendants have waived their right to assert the first manifest defense because they paid benefits to Plaintiff for six years while having knowledge of his prior hospitalizations and further waited another two years during the course of this litigation before raising the first manifest defense. Defendants' reply brief addresses this argument. Additionally, Defendants' position regarding the delay in raising the first manifest defense is clearly set forth in their Motion for Leave to File Amended Answer to Amended Complaint, filed May 13, 2002, and in their reply brief associated with that motion, filed May 24, 2002.

The Court notes at the outset that this is not like the typical waiver or estoppel case in which an insured asserts that the insurance company should be bound by the representations and agreements of its agent as to the scope of coverage at the

---

4. Plaintiff has also argued that the definition of "sickness" is ambiguous. This argument rests on a very strained reading of the Policy's language. The Policy clearly sets out the definition of sickness and the Court will not impute ambiguity into the Policy where no ambiguity exists.

time an insurance policy is issued. *See, e.g., Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1 (Tenn.1991). There is no assertion that Defendants made any misrepresentations to Plaintiff regarding the terms of coverage. By contrast, in this case it was Plaintiff who made inaccurate statements .at the time he obtained the Policy. Given the existence of the incontestability clause, Defendants to their detriment can not contest the validity of the Policy based on Plaintiff's false statements. To the further detriment of Defendants, Plaintiff now seeks to invoke the doctrine of waiver to prevent Defendants from contesting the payment of benefits on the grounds that Plaintiff's Policy does not cover his disability. Although more than eight years. has passed since Plaintiff first filed a claim for benefits under this Policy, the Court does not find that Defendants' conduct constitutes wavier of the specific insurance contract language applicable in this case.

 With respect to the doctrine of waiver, Tennessee requires a showing of intent to waive a right, or actions that are so inconsistent with the right that the conduct constitutes an implied waiver. As one Tennessee court has summarized:

> The courts of this state repeatedly have held that in order to constitute an abandonment or waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel on its part. Abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought clearly to appear.... Waiver may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by failing to act, as to induce a belief that it was [the party's] intention and purpose to waive. In order to establish waiver by conduct, the

proof must show some absolute action or inaction inconsistent with the claim or right waived. Specifically, the record must show conduct on the part of the insurance carrier which is so clearly inconsistent with an intention to insist upon strict compliance with the provision at issue that the conduct constitutes an implied waiver.

*Kentucky Nat'l Ins. Co. v. Gardner,* 6 S.W.3d 493, 498–499 (Tenn.Ct.App.1999) (internal quotations marks and citations omitted).

The facts relevant to the issue of waiver can be summarized as follows. Equitable's application form for a disability policy specifically requests information about prior illnesses and treatments, including psychiatric treatments. (Am. Compl. at Exh. A.) Plaintiff's only response to these questions when he filled out the application was "Consulted Dr. C.B. Daniel for routine check-up. Normal findings. No treatment needed." (*Id.*) On June 17, 1994, when Plaintiff first applied for disability benefits, he indicated that "[p]ost-traumatic stress disorder manifested itself on or about *December 1993*", which was well after he applied for the Policy. (Def.'s Mem. of Facts and Law in Supp. of Mot. for Summ. J. at Exh. 3.) (Emphasis added.) However, at the same time, his attending physician, Dr. Ayubi, answered "Yes" to the question of whether Plaintiff's condition had occurred previously. Dr. Ayubi indicated that Plaintiff had been hospitalized with the Veteran's Administration long before the Policy was issued. Specifically, Dr. Ayubi noted that he had been admitted to the Veteran's Administration hospital "to manage his manic symptoms" in July of 1983, September of 1986, and October of 1986. (*Id.*) In 1996, Plaintiff underwent an independent medical examination with Dr. Reisman prior to receiving total disability benefits. He informed Dr. Reisman that the first episode of his illness

occurred in 1979 when he was hospitalized at St. Francis Hospital for a psychiatric evaluation. (Pla.'s Stm't of Und. Fact ¶ 29.)

From the records presented to the Court, it appears that Defendants attempted to obtain records from the Veteran's Administration on several occasions in order to clarify these discrepancies and verify Plaintiff's previous condition. (Pla.'s Resp. in Opp. to Def.'s Mot. to Am. Ans. at Exhs. C, F, G, N.) For example, on November 22, 1994, a document reflecting the claim department's eight-month review notes, "1) Follow-up [with] insured for original auth[orization]. Advise him we must have records for consideration of further benefits. 2) Follow-up [with] Equifax—why haven't we [received] records from the VA hosp[ital]? 3) Discuss prior manifest/incontestability [with] legal once meds [received]." (*Id.* at Exh. F.) As recently as July 3, 2000, Defendants' claims worksheet notes, "We are still trying to obtain the actual records from the VA. They have been requested several times." (*Id.* at Exh. N.) Defendants had merely received verification of his admission and discharge dates from the psychiatric ward and some laboratory results. (*Id.* at Exh. G; *see also* Def.'s Reply to Pla.'s Resp. in Opp. to Def.'s Mot. for Leave to File Am. Ans. to Am. Compl. at 6–7, Exh. I.) Defendants did not receive Plaintiff's actual records from the Veteran's Administration until March 20, 2002, well after the commencement of this litigation.

Defendants' continued attempts to verify the exact nature of Plaintiff's prior illness and treatment demonstrate that Defendants did not knowingly or unequivocally waive their right to assert the first manifest defense. Throughout the six years Defendants made benefit payments under the Policy, they sought to verify whether Plaintiff had, indeed, been diagnosed and treated for the same mental illness prior to

the issuance of the Policy. This activity does not show "absolute action or inaction inconsistent with the claim or right" that would justify an implied waiver.

By contrast, Plaintiff's only evidence that Defendants waived the first manifest defense is that they continued to make benefits payments while they were reviewing contradictory statements in his file. This evidence is insufficient to raise a genuine issue of material fact as to whether Defendants knowingly or unequivocally waived their right to assert the first manifest defense.

Though Plaintiff has not specifically raised the argument of waiver by estoppel, the Court would also find this argument inapplicable. In order to establish waiver by estoppel, Plaintiff "must show that he prejudicially changed his position in reliance upon the other party's conduct." *Gardner*, 6 S.W.3d at 501; *Spears v. Commercial Ins. Co.*, 866 S.W.2d 544, 549 (Tenn.Ct.App.1993). There is no evidence of a prejudicial change in Plaintiff's position from the record in this case.

Finally, to apply the doctrines of waiver or estoppel in this case would contravene public policy. It is in the public interest for insurance companies to pay benefits to an insured even while the insurer continues to evaluate a claim. The Court would create the wrong incentives for insurers if it were to hold that Defendants waived their right to contest coverage under the Policy because they waited (albeit eight years) to contest coverage until they had received confirmation of the nature of the illness for which Plaintiff had been hospitalized with the Veteran's Administration.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Defendants. Plaintiff's disability is not covered by the terms of the Policy because it was

first diagnosed or treated prior to the issuance of the Policy. Defendants have not waived this defense. As the Court has granted Defendants' motion for summary judgment, the Court need not address the remaining motions for partial summary judgment.